Leslie A. HENDERSON, Sr., Appellant,

v.

HENDERSON FUNERAL HOME CORPORATION, Appellee.

Court of Appeals of Kentucky.

Nov. 28, 1958.

Rehearing Denied Feb. 13, 1959.

H. R. Wilhoit, Grayson, for appellant.

Ora F. Duval, Olive Hill, for appellee.

EBLEN, Judge.

This is an unfair competition suit in which the appellee was awarded injunctive relief, compensatory damages of $5,000 and punitive damages in the amount of $20,000.

In 1946, the appellant, who had been engaged in the operation of a funeral home in Olive Hill with his father, became the owner of all the capital stock of Henderson Funeral Home Corporation. This was, and for several years had been, the only funeral home in Olive Hill. Appellant continued in the operation of this establishment until 1953, when he became involved in marital difficulties, which resulted in a divorce, and the execution of a property settlement. Pursuant to that settlement, appellant transferred twenty-five shares of his stock to his former wife, and sold the remaining twenty-five shares to his brother, who was to pay therefor a monthly sum to appellant's former wife over a period of eighteen years. The property transfer was in satisfaction of the appellant's obligation to support his former wife and their five children. During the trial it was indicated by some of the appellee's witnesses that the appellant agreed orally to go west and never to engage in the funeral home business in Olive Hill.

A few months after the recited events the appellant returned to Olive Hill and opened the "Leslie A. Henderson Funeral Home," which was listed in the telephone directory as "Henderson Leslie A. Funeral Home." In the September, 1956, issue of the telephone directory the appellant had this same listing and number and a second number for the name "Henderson Funeral Home." At that time the appellee was listed in the directory as "Henderson Funeral Home Inc," although some of its previous listings had been "Henderson Funeral Home." The charge of unfair competition is based upon the appellant's use of the name "Henderson Funeral Home" in the telephone directory.

It is readily apparent that the use of the name "Henderson Funeral Home" by appellant would confuse many, and would be calculated to cause the public to call for appellant's services when those of appellee were desired. The appellee had operated under this name for many years and the name and appellee's business were regarded as one and the same. Although, as far as this litigation is concerned, the appellant had the right to engage in this business under his full name, he would not be permitted to use only his last name which, through usage and public recognition, identified the busi-

ness of a competitor. Kay Jewelry Company v. Gay's Jewelry, Ky., 277 S.W.2d 30. The explanation offered by the appellant for his application for a second phone under the name "Henderson Funeral Home" is flimsy, indeed. At most this would relate only to the question of malice and the claim for punitive damages. No matter what the appellant's reasons may have been, the lower court correctly granted injunctive relief against further use of the name "Henderson Funeral Home" by the appellant.

The charge, made by the appellant, that the damages, both compensatory and punitive, were so excessive as to be the product of passion and prejudice can be better evaluated when considered in conjunction with alleged prejudicial errors in the admission of evidence.

The appellee showed that some persons, in attempting to make telephone calls to appellee and its personnel, did on occasions find that they had called the appellant. In only two of these instances is it claimed that business was diverted from appellee to appellant. The first of these was the Rose funeral, the attempted call to appellee having been made by the jailer of Boyd County who stated that two brothers of the deceased requested him to make the call for them. The jailer did not consult the directory, but simply told the operator the party to whom he wished to speak, and it was not known that he had contacted the wrong party until appellant's vehicle and personnel arrived at the jail.

In rebuttal the appellant showed that this funeral was on July 30, 1956, some two months before the listing in the September, 1956, telephone directory. Further, the two brothers of the deceased, Rose, testified that they requested the jailer to make the call and that they wanted Leslie A. Henderson to render the funeral service.

A second instance is that of loss of ambulance service to Bessie Justice, and this, too, is weak. Bessie was in the hospital in Ashland and requested the daughter of a patient in the same room to call "Gyp Henderson," appellant's brother. Gyp Henderson was not listed in the directory, and the person who made the call did not testify.

The appellee argues that a court should not be overnice in requiring proof of actual loss of business, because (a) of the difficulty of obtaining the evidence, and (b) damages are presumed from the violation of the rights of the appellee. The argument would carry more weight were we dealing with two businesses in a larger city. Here the community is small, and the persons needing this type of service are fairly well-known to the parties. Moreover, the appellant gave a detailed account of all the funerals he had during the period, and most of the persons who would have selected the funeral home to conduct them were presented as witnesses and stated that they wanted the Leslie A. Henderson Funeral Home.

 Under these circumstances the doubtful showing of a loss of one funeral and one ambulance trip will not support an award of $5,000 in compensatory damages. Our conclusion in this regard is strengthened when we review the evidence that the jury was permitted to consider. The wife of the appellant was permitted to testify that, at the time the appellant transferred the stock in the funeral home to her, he did not pay any money for the support of her or the children; that there were five infant children; that appellant's brother had not been able to pay her the monthly sum due as the purchase price of his stock because they had not had the business; that the business was indebteded in the sum of $18,000 at the time of the transfer of the stock; and that at the time of the property settlement the appellant told her he would never engage in the funeral business in Olive Hill. Appellant's brother testified that he was able to and did make to appellant's wife the payments due on the purchase price of the stock, but that after the appellant re-

turned and established a second funeral home the appellee had not had sufficient business for him to make the payments.

▆ The lower court stated that other litigation between these parties was pending and indicated that this evidence was being admitted as background. We cannot escape the feeling that the jury may well have thought that it was commissioned to redetermine appellant's obligation to support his former wife and children and to pass upon appellant's right to engage in this type of business in Olive Hill. The evidence relating to the property settlement had no place in this litigation. The means by which the appellant's former wife acquired her stock were not competent in adjudicating this claim for unfair competition. The excessiveness of the compensatory damages is concrete evidence of the prejudicial effect of this incompetent testimony.

▆▆ Considering the small amount of actual damages shown in this case, and the great probability, if not the certainty, that the jury was influenced by evidence that should have been excluded, we conclude that punitive damages of $20,000 are so excessive as to indicate the presence of passion and prejudice. While it has been said that it is not essential that punitive damages, where authorized, bear any reasonable relation to the actual damages suffered (Maddix v. Gammon, 293 Ky. 540, 169 S.W.2d 954), it is necessary, because of the absence of such a limitation, that there be no reasonable basis for concluding that the former flow from a consideration of incompetent evidence so likely to inflame the passion and prejudice of the jurors.

That part of the judgment granting injunctive relief to the appellee is affirmed, and that part of the judgment awarding the appellee compensatory and punitive damages is reversed and the case is remanded for a new trial on the question of damages.