**POPULAR MERCHANDISE COMPANY, Inc., Appellant,**

v.

**"21" CLUB, INC., Appellee.**

**Patent Appeal No. 7355.**

United States Court of Customs and Patent Appeals.

April 15, 1965.

Nicholas John Stathis, New York City (Leslie D. Taggart, New York City, of counsel), for appellant.

Emory L. Groff, Emory L. Groff, Jr., Washington, D. C., for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

ALMOND, Judge.

Appellant, Popular Merchandise Company, Inc., filed application [1] to register the mark " '21' CLUB" as a service mark on the Principal Register, asserting use of the mark since September 1, 1957. The services for which registration is sought are described as "operating a retail purchase plan by which the goods of others are sold to members of purchasing clubs."

Appellee, "21" Club, Inc., filed notice of opposition,[2] alleging prior use of a plurality of marks consisting of or comprising the numeral "21" [3] or the notations "TWENTY ONE CLUB" [4] or " '21' CLUB" [5] for a wide variety of products. Both parties took testimony and introduced documents and other materials in evidence.

The Trademark Trial and Appeal Board sustained the opposition and refused registration of the service mark " '21' CLUB", from which decision, 139 USPQ 127, appellant prosecutes this appeal.

The relevant facts disclosed by the record, and as found by the board, are substantially as follows:

For more than thirty years appellee has operated a restaurant at 21 West 52nd Street in New York City under the trade designations Jack & Charlie's "21" and/or "21" Club, Inc. The restaurant is patronized by persons from all sections of this country and from many foreign countries, serving an estimated 1,000 persons a day. It is nationally famous for the excellence of its cuisine, and as a favorite dining place for well-known writers, actors, sportsmen and other personages. Customers and others familiar with appellee's restaurant commonly refer to it as " '21' Club" or as "21." Numerous articles and references concerning "21" or "21 Club" have appeared in magazines having a nation-wide circulation. References have been made thereto in syndicated newspaper columns, stage and television plays, novels and motion pictures.

In one corner of the building housing the restaurant business, and in connection therewith, appellee operates a retail establishment wherein restaurant customers and others may purchase or order a wide variety of merchandise, such as canned food products in the nature of delicacies, hard candies, glassware, chinaware, sterling silver and silver-plated flatware and hollow-ware, tablecloth and napkin sets, lamps, ashtrays, bookends, jewelry, table cooking utensils, desk and pocket lighters, and food carts.

The board found that these products are either made by appellee or by others in accordance with appellee's specifications; that many of them bear one or another of appellee's registered trademarks comprising the numeral "21"; that as early as 1941 the products made by or expressly for appellee for sale in its retail establishment have also been sold by appellee through a related company to department and other type retail stores for resale to their customers; that the related company also conducts a sizable mail order business in these products, and, in its advertising material, it is emphasized that such company is merely a distributor of the products for appellee.

Appellant operates a mail order merchandise business in which it employs the notation " '21' CLUB" for a retail purchase plan through which it offers its merchandise to members of purchasing clubs organized by appellant's sales agents, who are known as "club secretaries." Club members purchase merchandise on credit which they select from a catalogue published by appellant known as the Popular Club Plan catalogue. The members agree to pay to their respective

1. Serial No. 62,786, filed November 19, 1958.

2. Opposition No. 40,857 filed April 7, 1961.

3. Reg. Nos. 350,864, 350,865; 554,789; 558,798; 559,080; 559,891; 560,535; 560,536 and 575,840, all issued prior to April 1954.

4. Reg. No. 530,285 issued September 5, 1950.

5. Reg. No. 592,489 issued July 13, 1954.

club secretaries one dollar a week for twenty-one weeks for each twenty dollars worth of merchandise purchased. The club secretary transmits the orders, with payment therefor, to appellant and the merchandise is delivered to the club member. The articles pictured in the catalogue are sold under the manufacturers' trademarks. These articles are such as imported strawberry preserves and cheeses, sterling silver and silver-plated flatware and hollow-ware, crystalware and imported chinaware, ashtrays, lamps, cooking utensils of various kinds, jewelry, tablecloths and cigarette lighters.

Virtually all of the members of the " '21' CLUB" plan are women who are generally wives of factory workers having a family income of approximately $3,000 to $6,000 per year. It was testified that the plan had approximately 15,000 club secretaries and approximately 150,000 members and that from September 1, 1957, when appellant first began to use its service mark " '21' CLUB," through 1961, sales under the plan were in excess of $11,000,000 and the amount spent for advertising the mark was in excess of $800,000. At the time testimony was taken, the plan with the mark operated only in the states of Delaware, Maine, Maryland and New Jersey.

The grounds of opposition asserted below, and here, propound two main issues. As stated by appellee, they are:

"(A) Does Appellant's service mark so resemble Appellee's previously used trade name and registered trademarks as to be likely, when applied to the services of Appellant, to cause confusion or mistake, or deception of purchasers within the meaning of Section 2(d) of the Trade Mark Act of 1946?; (B) May Appellant's service mark disparage or falsely suggest a connection with Appellee's corporation within the meaning of Section 2(a) of the Trade Mark Act of 1946?"

As to issue (B), the board held that sections 2(a) and 2(d) "were mutually exclusive in character." Noting that section 2(a) prohibited registration of a mark which consists of or comprises "matter which may disparage or falsely suggest a connection with persons, living or dead, institutions * * *," the board held that appellee, a commercial corporation, could not qualify as "persons living or dead" or as "institutions" within the meaning of section 2(a) and that prior use of their trade names could not form a basis for opposition in the absence of a likelihood of confusion or mistake or deception within the purview of section 2(d), citing The Alligator Company v. Larus & Brother Company, Inc., 196 F.2d 532, 39 CCPA 939.

As to issue (A), the board, finding that the goods of the respective parties are in part identical in kind and that appellant's service mark is identical to the distinguishing feature of appellee's trade name, held that:

" * * * persons familiar with opposer's restaurant, and with the fact that opposer also sells merchandise in said restaurant, and on mail order and otherwise, might well suppose, upon encountering applicant's " '21' CLUB" retail purchasing plan, that the goods sold thereunder emanate from or are sponsored by opposer, or that there is some business connection between the parties."

Appellant seeks to invoke the doctrine of estoppel in that appellee is not in a position to contend that it would be damaged by registration to appellant of " '21' CLUB" as a service mark by reason of the fact that appellee has had knowledge, without objection, to the use and registration by a producer and a distributor of alcoholic beverages of marks comprising the numeral "21." We think the board correctly disposed of this contention in its finding and conclusion that appellant is not in privity with the producing and distributing firms alluded to and that their use and registration of the marks can have no relevant bearing on appellant's right to register its mark. This circumstance does not, in our view, militate against the appellee's assertion of any rights it may have against the

application for registration here sought by appellant. Traub Mfg. Co. v. R. Harris & Co., 53 F.2d 416, 19 CCPA 704.

As did the board, we find that the record clearly refutes appellant's contention that appellee does not exercise a legitimate control of the nature and quality of the goods sold by a related company under appellee's marks.

 We find no logical basis of record to justify appellant's assumptions relative to the differences between the average purchasers of the respective goods of the parties. While some of the goods of appellee may be classified as "luxury items" with appeal to the discriminating and sophisticated purchaser, we find considerable "overlapping" of goods in that many of the goods of each party are in the same price range with some similar and others identical in nature and character with appeal to the same class of purchasers.

Finding therefore that the goods of the parties are in considerable part identical in kind and that the competing marks are identical, we can perceive no reversible error on the part of the board in its conclusion that confusion or mistake, or deception of purchasers, within the meaning of section 2(d) of the Trademark Act of 1946, would be likely to ensue.

While our disposition of issue (A), relating to a likelihood of confusion under section 2(d), might well obviate the necessity of dealing with issue (B), relating to section 2(a) of the Trademark Act, we deem the matter of sufficient importance to review the decision of the board as it relates to this latter aspect of the record before us. This phase of the instant matter was argued by counsel before us and dealt with in the brief of appellee. The issue under 2(a) was squarely raised in appellee's notice of opposition and relied on as a basis for denial of the registration of appellant's mark. In Powermatics, Inc. v. Globe Roofing Products Co., Inc., 341 F.2d 127, 52 CCPA ——, this court held that the winning party in a trademark interference case is entitled to raise the issue

as to the propriety of the board's ruling that the losing party had continuously used the mark in issue during a specific period prior to the winning party's first use. The court stated:

"While Globe agrees with the board's reason for awarding priority, it urges that we also consider the propriety of the board's ruling that appellant had continuously used 'PANELUME' or 'PAN-ELUM' from December 1959 to some time in November 1960. As the winning party below, it is entitled to raise that issue for reasons similar to those set out in Klemperer v. Price, 271 F.2d 743, 47 CCPA 729."

The Klemperer case involved a motion to dismiss a notice of appeal from a decision of the Board of Patent Interferences. The winning party below was awarded priority of all the subject matter in issue in the interference. The award of priority was based on a holding that the adversary application would not support the interference counts. The board ruled, however, adversely to the winning party on an issue of estoppel and res judicata which ruling did not affect its award of priority. The notice of appeal assigned error as to the board's holding relating to estoppel and res judicata but of course alleged no error as to the board's ultimate conclusion on the award of priority favorable to appellant.

In a per curiam opinion disposing of the motion to dismiss the notice of appeal, the court noted that Title 35, Section 141, of the United States Code provided for an appeal by "A party to an interference dissatisfied with a decision of the board of patent interferences on the question of priority * * *." The appellant was not dissatisfied with the board's decision on priority but was dissatisfied merely with holdings of the board on other phases of the matter not necessary to that decision, hence section 141, supra, did not apply. The court stated:

"It has been repeatedly held by this court, however, that all questions pertinent to the issue of priority of

invention are before the court in considering an appeal from the Board of Patent Interferences and that it is not necessary for the successful party to an interference to file an appeal in order to preserve his right to argue any such question which has been decided adversely to him below."

While the Powermatics case involved a trademark interference proceeding and the Klemperer case involved a patent interference proceeding, before the tribunals of first instance, we perceive no sound reason why the rule applied by this court in those cases should not bear analogous efficacy in the instant matter involving a trademark opposition proceeding.

■■ In the instant case the appellee asserted a right below predicated on an applicable statute. A decision of the board denying that right by reason of an erroneous construction of the statute should not preclude the appellee, the successful party below, from bringing the matter to this court for review without the necessity of filing an appeal in order to secure an adjudication of the asserted right.

In essence, the board decided that appellee could not rely on section 2(a), predicating its decision on the status of appellee as a corporate entity and therefore as such could not qualify as "persons living or dead." This construction of the statute was preclusive of the board's determination of whether or not the mark sought to be registered consisted of or comprised "matter which may falsely suggest a connection with persons living or dead." In thus construing the statute, we think the board committed error.

Section 45 of the Trademark Act of 1946, relating to construction and definitions, states:

Person, juristic person. "The term "person" and any other word or term used to designate the applicant or other entitled to a benefit or privilege or rendered liable under the provisions of this Chapter *includes a juristic person as well as a natural person.* The term "juristic person" includes a firm, corporation, union, association, or other organization capable of suing and being sued in a court of law." (Emphasis supplied.)

The intention of the Congress is as crystal clear as can be rendered by language that a corporation, so situated as appellee here, is within the scope and purview of section 2(a) of the Lanham Act. To hold to the contrary would be to run directly contrary to the express language of the statute.

We have noted the board's reliance on the Alligator Company case. The court in Alligator either ignored or completely overlooked section 45 of the Trademark Act of 1946. We cannot construe section 2(a), with reference to its applicability to the instant matter, in disregard of the provisions of section 45. To the extent that the Alligator case conflicts with the views here expressed, the same is hereby expressly overruled.

For the reasons stated, we disagree with the decision of the Trademark Trial and Appeal Board's holding that appellee could not qualify to invoke the provisions of section 2(a) of the Trademark Act of 1946, and affirm the decision of the board on the issue of likelihood of confusion within the meaning of section 2(d) of the Trademark Act of 1946.

Affirmed.