56 CCPA

**MOREHOUSE MANUFACTURING CORPORATION, Appellant,**

v.

**J. STRICKLAND AND COMPANY, Appellee.**

**Patent Appeal Nos. 8047, 8048.**

United States Court of Customs and Patent Appeals.
March 6, 1969.

882

George H. Baldwin, Jacksonville, Fla., for appellant.

Harry W. F. Glemser, Bacon & Thomas, Washington, D. C., for appellee.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN and KIRKPATRICK,* Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Trademark Trial and Appeal Board, 150 USPQ 688 (1966), in two proceedings. The first is Opposition No. 42,662 (Appeal No. 8048) and the second is Cancellation No. 8,310 (Appeal No. 8047).

Appellant, Morehouse Manufacturing Corporation, opposed appellee J. Strickland and Company's application serial

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

No. 145,741, filed May 29, 1962, to register "Blue Magic" for pressing oil, claiming first use on such goods on March 15, 1956.

Appellee already had a Principal Register registration of "Blue Magic," No. 589,044, issued April 27, 1954, and claiming first use on February 24, 1953, for hair dressing. Appellant seeks to cancel that registration.

The record shows that Strickland's "hair dressing" and "pressing oil," both sold under the "Blue Magic" trademark, are one and the same product. It is a semi-solid, petroleum-base material resembling petroleum jelly (petrolatum or "Vaseline") in consistency, light blue in color, and perfumed. Hair dressing is used as the name implies, to hold the hair in place and to give it gloss. Pressing oil is used in conjunction with a hot comb for straightening undesirably curly hair. Appellant's product is useful for both purposes. Its market is primarily persons of the Negro race.

The product was labeled as "hair dressing" from February 1953 to March 1956. From then to July 1957 it was not named on the label but was described thereon as "for pressing and dressing the hair." Thereafter it was designated on the label as "pressing oil." [1] It was, however, still hair dressing.

The above-mentioned registration having described the goods as hair dressing, appellee's record shows that the present application, which designates the same goods as pressing oil, was filed as "a precautionary measure * * * to

technically protect its trademark rights * * *." The date of first use stated in the application at bar is the date of the change in the *designation* of the goods on the label, notwithstanding the goods themselves remained the same.[2]

Morehouse filed its Notice of Opposition on March 13, 1963. It did not file its Petition for Cancellation until July 17, 1964, more than a year after it received actual notice of Reg. No. 589,044, in the Answer to the Notice of Opposition. Morehouse made several attempts to consolidate the opposition and cancellation, all of which were denied, four times by the board and once on Petition to the Commissioner. The testimony and exhibits were taken and introduced in the opposition and introduced into the cancellation on a motion before the board, which it granted. A few additional documents were introduced in the cancellation. Notwithstanding the several refusals of the board to consolidate, it appears to have concluded, sua sponte, that both proceedings should be considered and decided in a single opinion.[3]

In its opinion, the board, after disposing of preliminary questions, dealt first with the cancellation. It decided five different issues raised by Morehouse as grounds of cancellation, all adversely to Morehouse, and therefore denied the petition to cancel, which left standing Strickland's registration of "Blue Magic" for "hair dressing." Having reached that conclusion, the board then dismissed the opposition because it did not see how Morehouse could be

---

1. The directions from a typical label are indicative of the uses:
   DIRECTIONS FOR PRESSING: Apply a small amount of Blue Magic Pressing Oil to the hair and scalp. Brush in well. Use only a moderately hot iron or comb for best results. Protects the hair from burning and leaves it silky and soft. Blue Magic Pressing Oil conditions the scalp and hair, gives a lovely, long-lasting gloss. It is unexcelled as a dressing between pressings.

2. Testimony shows that the change in designation was made because it was

thought it would improve sales. The product was a good pressing oil, there were many hair dressings on the market, and it was felt that selling it as a pressing oil would persuade purchasers that they could get extra use from it, making it more competitive with other hair dressings.

3. Final hearing in the opposition before the board was on October 7, 1965, while the hearing in the cancellation was on briefs early in 1966. The board rendered its combined decision June 16, 1966.

damaged by the issuance of another registration of "Blue Magic" for the identical goods, albeit the label featured the goods as "pressing oil" rather than "hair dressing," where the goods are sold as useful for both purposes. Directly or indirectly, the board relied on Artichoke Industries, Inc. v. Regina Grape Products Co., 138 USPQ 687 (TTAB 1963); Eastern Metals Research Co. v. Hunter Spring Co., 119 USPQ 448 (TTAB 1958); Scudder Food Products, Inc. v. Southern Fruit Distributors, Inc., 119 USPQ 450 (TTAB 1958); and Standard Motor Products, Inc. v. Standardized Products Co., 107 USPQ 147 (Comr. 1955). The proposition for which these cases were cited is that, as a matter of law, the opposer cannot be damaged, within the meaning of section 13 of the statute, by the issuance to the applicant of a second registration where applicant already has an existing registration of the same mark for the same goods. Implicit in this are the corollaries that if opposer cannot procure the cancellation of the existing registration it cannot prevent the granting of the second registration; that there is no added damage from the second registration of the same mark if the goods named in it are in fact the same; and that if there is no added damage, there is no ground for sustaining the opposition.

■ As to the existing registration being for the same mark, while there are trifling differences it takes careful inspection to detect them. Therefore, essentially the same mark is described in the registration and in the application. Appellant has treated them as identical. We think the board took the proper approach in first determining the cancellation and then dismissing the opposition, on the basis of the cases relied on, for the reason that opposer cannot suffer legal damage from the additional registration, over and above any damage it may suffer from the existing registration. Indeed, it appears to have been opposer's view throughout the proceedings that the issues in the cancellation had to be decided first because they would be controlling, or substantially so. The major thrust of opposer-appellant's brief before us is that appellee's registration should be cancelled though, additionally, it is urged that the opposition should be sustained in any event because of likelihood of confusion under section 2(d) of the Trademark Act (15 U.S.C. § 1052(d)).

Appellant Morehouse bases its petition to cancel and opposition on its ownership of Reg. No. 510,244, issued May 31, 1949, on an application filed August 20, 1947, of the trademark for "a de-

pilatory in powder form." The registration claims use since 1901. It also relies on Reg. No. 741,715, issued Dec. 4, 1962, on application filed Dec. 18, 1961, for the word "MAGIC" alone for "depilatory in powder form and for after shave cream," again claiming first use in 1901 "on depilatory in powder form."

These marks are shown to be used on "shaving powder," the name appearing on the labels, which is a white, powdered, chemical depilatory used primarily by Negroes in place of shaving. This powder is sold in two strengths, "medium" and "full." The full-strength shaving powder is sold in a 5-ounce fiber can covered with a paper label having a solid red background. The medium-strength product, which is the bigger seller, is similarly packaged but the label has a two-tone blue background, the upper half light and the lower half dark blue. In both cases, opposer's cans carry the full trademark of Reg. No. 510,244,

so that on its face it reads, top to bottom, "MAGIC—design of a straight razor and the words NO MORE TROUBLE in a circle—SHAVING POWDER (depilatory)—Removes Beard without a Razor." In a small oval to the left of the razor design portion of the mark are the words "medium strength" or "full strength." At no time relevant to this proceeding has the word "blue" appeared on the label.[4]

With this background, we will now consider the points argued by appellant in attemping to show that the board erred. Like the board, we will consider first the points bearing on the petition to cancel.

■■ Observation of the date of appellee's "Blue Magic" registration will show that it had been issued for five years on April 27, 1959, and hence, being a Principal Register registration, had become "incontestable" before these proceedings commenced *provided that* the registrant complied with the requirement of the statute for filing an affidavit of continuing use, etc. Section 15,

Trademark Act (15 U.S.C. § 1065). The registrant, appellee here, filed such an affidavit, which was accepted, and the mark became "incontestable." To cancel it, appellant must therefore comply with section 14(c) (15 U.S.C. § 1064 (c))[5] and has attempted to do this in two ways: (1) by showing the registration was "obtained fraudulently" and (2) "contrary to the provisions of * * subsection (a) * * * of section 2 of this Act * * *." We will first consider the allegations of fraud, which were also presented to and rejected by the board.

Appellant says appellee's registration was obtained fraudulently because of the following facts. The first office action rejected the application on the sole ground "that the descriptive word 'blue' is not disclaimed apart from the mark." Applicant (appellee) filed a response, which resulted in the application being passed to publication, in which it was stated:

> The word "blue" is not descriptive in any sense of applicant's goods and,

4. The record shows that on Feb. 12, 1964, eleven months after filing the Notice of Opposition herein, opposer first sold medium strength or "blue label" MAGIC SHAVING POWDER with a label on which the word "BLUE" was printed in relatively small letters above the trademark MAGIC and that an application, serial No. 189,237, was filed by opposer to register BLUE MAGIC for "depilatory in powder form" on March 20, 1964. This was before the filing of the petition for cancellation. We are in no way concerned with that application but mention it as appellee's brief attempts to make much of the fact that appellant "surreptitiously" filed the application which, appellee advises us, is under rejection on its registration No. 589,044, here sought to be cancelled, and suspended pending the outcome of these proceedings. The board opinion refers to appellant's Feb. 12, 1964, use of "Blue Magic" as a trademark on shaving powder. Such use is too late to be material here.

5. *Sec. 14 (15 U.S.C. § 1064). Cancelation of registrations*
  A verified petition to cancel a registration of a mark, stating the grounds

relied upon, may, upon payment of the prescribed fee, be filed by any person who believes that he is or will be damaged by the registration of a mark on the principal register established by this Act * * *—

\* \* \* \* \*

(c) *at any time* if the registered mark becomes the common descriptive name of an article or substance, or has been abandoned, *or its registration was obtained fraudulently or contrary to the provisions of * * * subsection (a),* (b), *or* (c) *of section 2 of this Act* * * *. [Emphasis added.]

Subsection (a) of section 2 (15 U.S.C. § 1052) proscribes registration of a mark which

(a) consists of or comprises immoral, deceptive, or scandalous matter; or matter which may disparage or *falsely suggest a connection with persons, living or dead*, institutions, beliefs, or national symbols, or bringing them into contempt, or disrepute * * *. [Emphasis added.]

therefore, it is not understood why the registration has been refused upon such ground. Inasmuch as the word "blue" is not descriptive, it would appear to be unnecessary to disclaim such word.

The facts of record are that if one opens the opaque box of "Blue Magic" and looks at its contents—being a body of substance 3″ in diameter and 2″ deep—it appears to be pale blue, as the ocean sometimes appears to be blue. However, a small dab placed in the palm of one's hand and rubbed out thin, as it would be before being applied to the hair as a dressing, imparts no color to the hands and is, in that sense, colorless, unlike the effect which would be produced by similar manipulation of blue ink or paint or chalk.

■ It appears to us that both appellee and the board fail to meet the issue of descriptiveness head on. We deem it reprehensible that such a flat-footed denial as the above was made when the product, at least in bulk, does look blue. A disclaimer of the word "blue" apart from the mark would have been harmless. The argument before us is, however, calmly switched to a consideration of the mark "Blue Magic" as an "entirety," which clearly is not descriptive of anything and before the board it was argued that the opposer was attempting to "make a mountain out of a mole hill," with which the board agreed. It is clear to us that the statement made to the examiner was untrue, at least in part. But the question is whether that is sufficient to support the allegation, under section 14(c), that the registration was "obtained fraudulently." The board thought not, giving as its reasons: (1) it is of no particular significance that the product is pale blue; (2) no similar requirement to disclaim was made by the examiner in the application at bar; (3) "Blue Magic" as an entirety is arbitrary; (4) among the many third-party registrations of record (59 of them) are a number comprising "MAGIC" and a word signifying color wherein the Patent Office required no disclaimer. What we make of all this is that the board did not consider the misrepresentation of the color of the product (seen only when it is viewed in a certain way) to be a *material* misrepresentation or one vital to overcoming the ground of rejection and hence insufficient to constitute a fraud on the Patent Office. Considering the practical unimportance of disclaimers of single descriptive words in composite word marks and the historic changes in position of the Patent Office through the years with respect to requiring them, see Vandenburg, Trademark Law and Procedure, § 10.11(g) and D. Robert, The New Trade-Mark Manual, pp. 77–81 (1947), it is our judgment that the above-quoted statement which resulted in the withdrawal of the rejection, though in part untrue, was not in this case on a material matter and hence not a basis for a holding of fraud. The registration was not "void ab initio," as contended by appellant, and we approve the board's refusal to cancel on this ground.

Appellant's next contention is that registration No. 589,044 was improperly *continued* on the register by reason of a fault in the affidavit required to be filed under section 8(a) (15 U.S.C. § 1058(a)). The alleged fault here relates to the label attached to the affidavit. The statutory requirement is that to keep a registration in force for the full period of 20 years a registrant shall file, within the year preceding the sixth year after registration,

* * * an affidavit showing that said mark is still in use * * *.

On July 16, 1959, appellee, the registrant, by its President, George B. Long, who died in 1961 before these proceedings commenced, made the usual combined affidavit under sections 8 and 15 of the statute. It identified Reg. No. 589,044 and stated:

* * * that the mark described herein has been in continuous use in interstate commerce for five (5) consecutive years, from April 27, 1954 to the present, on or in connection with the following goods: HAIR DRESS-

ING, in Class 51, Cosmetics and Toilet Preparations; that the mark is still in use in interstate commerce; that a specimen of the mark as now actually being used is attached hereto and made a part of this affidavit in order to show such use; that there has been no final decision adverse to registrant's claim of ownership of said mark. or its right to register the same, or maintain it on the register, and that there is no proceeding involving any of said rights pending and not disposed of either in the Patent Office or in the courts.

No question is raised as to the truth of the statements therein, or the fact of continuing use of the mark, except with respect to the specimen label attached. Mr. Long, instead of attaching the label actually being used in 1959, on which the goods were named as "pressing oil," attached an earlier "Blue Magic" label which names the goods as "hair dressing," as does the registration. The record shows that this *label* had been discontinued about a year and a half after the first use of the mark. The *mark*, however, was still in use. In fact, sales of "Blue Magic" were steadily increasing at the time. And the goods were identical as to composition and use, though the name on the label had been changed from "hair dressing" to "pressing oil."

Appellee's brief attempts no justification of Mr. Long's act in attaching the wrong label other than to say it was probably inadvertent or a mistake and that, in any event, it is "unexplainable."

Appellant argues that the act of attaching the wrong label amounts to "fraudulently" *obtaining* a registration under section 14(c) and therefore calls for cancellation. The board disagreed. Appellant now argues that, even apart from fraud, cancellation is required because the registrant did not make a showing of current use as required by section 8(a).

Assuming that section 14(c), in the words "its registration was obtained fraudulently," includes *maintaining* a registration already obtained— and it is not at all clear that it does— we are not persuaded by appellant's arguments. Even assuming that the affidavit allegations with respect to the label were slipshod or somewhat devious, and hence to be condemned, again the question is whether they amount to fraud under the statute. The board did not consider the Patent Office to have been defrauded, which carries some weight with us. But more significantly, the only purpose of attaching a label to a section 8 affidavit is to support the allegations of continuing use with some tangible evidence. In this case on the record before us, there can be no question that appellee was continuing its use of "Blue Magic" on the same article for which it was initially registered at the time the affidavit was filed and that the allegations of continuing use were true. The mark shown on the label attached to the affidavit was substantially the same mark in use on the later label actually being used; a casual observer might well say it was the identical mark. All the statute requires is an affidavit "showing that said mark is still in use," making no reference to submission of specimen labels. The affidavit here submitted, in the words "a specimen *of the mark* as now actually being used," (emphasis ours) cannot *clearly* be said to be false because the mark on that label is substantially the *mark* as then being used, even if the label was not. If not clearly false, it cannot be said to result in fraud.

It should be remembered that the purpose of section 8 affidavits is to remove from the register automatically marks which are no longer in use. *Failure* of registrants to file affidavits results in removal of such deadwood.[6]

6. Of course, a trademark can be continued on the register even when it is not in use, as provided in section 8(a) or 8(b), if the registrant shows "special circumstances which excuse such nonuse" and that nonuse "is not due to any intention to abandon the mark."

The significant facts, therefore, are that an affidavit is filed and that a mark is actually still in use. Given the fact of continuing use, from which practically all of the user's substantive trademark rights derive, nothing is to be gained from and no public purpose is served by cancelling the registration of a technically good trademark because of a minor technical defect in an affidavit. There does not exist in trademark cases the fundamental reason for being on the alert to find fraud on the Patent Office which exists in patent cases. Every right a patentee has is given to him by the Patent Office. On the other hand, the acquisition of the right to exclude others from the use of a trademark results from the fact of use and the common law, independently of registration in the Patent Office. The happenstance that trademarks are registered in the *Patent* Office should not result in confusing the principles involved in dissimilar proceedings with respect to wholly dissimilar rights. It is in the public interest to *maintain* registrations of technically good trademarks on the register so long as they are still in use. The register then reflects commercial reality. Assertions of "fraud" should be dealt with realistically, comprehending, as the board did, that trademark rights, unlike patent rights, continue notwithstanding cancellation of those additional rights which the Patent Office is empowered by statute to grant.

Taking into account the foregoing facts and principles, we are of the view that appellant has failed to support his assertions of such fraud, or failure to make a showing of continuing use, as must result in cancellation of appellee's registration of "Blue Magic."

Appellant's next assertion in support of cancellation is that "Blue Magic" was registered contrary to the provisions of section 2(a) (note 5, supra) because that mark "consists of * * * matter which may * * * falsely suggest a connection with persons, living or dead * * *," to wit,

appellant Morehouse, a corporation. Appellee says this section has no applicability to corporations, notwithstanding the definition of "person" in section 45 to include "juristic person" and the definition of the latter to include a corporation, citing Alligator Co. v. Larus & Brother Co., 196 F.2d 532, 39 CCPA 939 (1952). The board appears to have agreed with appellee that 2(a) is not applicable to a corporation, notwithstanding our decision to the contrary in Popular Merchandise Co. v. "21" Club, Inc., 343 F.2d 1011, 52 CCPA 1224, (1965), in which we expressly overruled *Alligator* insofar as it conflicted with our views as there stated. While recognizing that in the *"21" Club* case we did hold that 2(a) applies to corporations, the board said that our holding to that effect was "dicta" and unnecessary to our decision. We disagree. We dealt squarely and at length with the applicability of section 2(a) to the facts of that case and expressly overturned a contrary ruling by the board. This can hardly be characterized as dictum. It was a second ground of decision. Where there are two grounds of decision upon either of which an appellate court may rest its decision and it adopts both, the ruling on neither is obiter dictum, but each is the judgment of the court and of equal validity with the other. In re Hession, 296 F.2d 930, 49 CCPA 809, (1961), and cases cited. See also, John Walker & Sons, Ltd. v. The American Tobacco Co., 110 USPQ 249 (Comr. 1956), and Copacabana, Inc. v. Breslauer, 101 USPQ 467 (Comr. 1954), both applying section 2(a) to corporations.

We agree with appellant that the board should not have attempted to overrule our *"21" Club* decision and should have held that a corporation is a "person" under section 2(a). But this avails appellant nothing on this point because we do not agree with the further argument that "Blue Magic" does "falsely suggest a connection with" appellant. To do this there would have to exist, at the very least, the same likelihood of confusion with appellant's "MAGIC"

marks, under section 2(d), which appellant contends for under its final point. We can therefore discuss these two questions together.

Appellant argues that registration on the application at bar should not issue, even if the cancellation petition is denied, because it is forbidden by section 2(d), the likelihood of confusion clause. Appellant's mark is "MAGIC" alone or in conjunction with the design of a straight razor in a circle. Both forms of the mark are registered but the registration of the word "MAGIC" alone was not applied for until December 18, 1961, more than five years after appellee obtained its "Blue Magic" registration, which registration had become "incontestable" under section 15. We are dealing, therefore, with the composite mark of appellant illustrated above and the goods named therein, namely, shaving powder or "depilatory in powder form," vis à vis appellee's "Blue Magic" mark for pressing oil.

On the issue of likelihood of confusion we have differences in goods and differences in the marks. To an even greater extent than in Shoe Corp. of America v. Juvenile Shoe Corp. of America, 266 F.2d 793, 46 CCPA 868, (1959), we also have a showing, in the form of a large number of third-party registrations, many of recent date, that "MAGIC" is a word which has been so often adopted as a part of composite word-marks in the cosmetic field as not, in itself, to be particularly indicative of origin when used in such marks. "Magic," moreover, is a common English word with no inherent distinctiveness. Considering the combined effect of these factors, we see no reasonable likelihood of confusion, mistake, or deception from the concurrent use of the involved marks on the different goods even when we take into consideration that their markets are, in each instance, principally Negroes, a point emphasized by appellant. For the same reason, we do not believe that "Blue Magic," under the facts of this case, falsely suggests a connection with appellant under section 2(a).

We have not overlooked the special circumstances that "MAGIC" shaving powder of medium strength is sold in a can having a blue label, which no doubt causes it sometimes to be referred to in the trade and by purchasers as "blue 'MAGIC'," in order to distinguish it from "red 'MAGIC'" which is the full strength product. It seems to us, when a dealer or a purchaser orders or asks for "blue 'MAGIC'" shaving powder, or picks it off the shelf by reason of its color and what he reads on the label, that the use of the word "blue" or reliance on the color of the label is involved only with a determination of the strength of the material and is not a matter of origin-indication or trademark significance.

For the foregoing reasons, the decision of the board denying the petition to cancel and dismissing the opposition is affirmed.

There remains the taxation of the cost of printing some twenty pages of printed record added at the request of appellee. We have found this material germane to the issues and useful to our understanding thereof. The cost of printing is therefore taxed against appellant.

Affirmed.

WORLEY, C. J., concurs in the result.

KIRKPATRICK, J., took no part in the decision of this case.