NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2006-1366, -1367
(Cancellation No. 92/041,265)

TELEDYNE TECHNOLOGIES, INC.,

Appellant,

v.

WESTERN SKYWAYS, INC.,

Cross-Appellant.

_____

DECIDED:  December 6, 2006

_____

Before MICHEL, <u>Chief Judge</u>, LINN and PROST, <u>Circuit Judges</u>.

MICHEL, <u>Chief Judge</u>.

Teledyne Techs., Inc. ("Teledyne") appeals from a final decision of the Trademark Trial and Appeal Board ("Board") denying its petition for cancellation of Registration No. 2,227,392 to Western Skyways, Inc. ("Western Skyways") of the mark GOLD SEAL for aircraft engines.  <u>Teledyne Techs., Inc. v. Western Skyways, Inc.</u>, Cancellation No. 92/041,265 (T.T.A.B. Feb. 2, 2006).  Teledyne asserts that laches should not have been applied against it because inevitable confusion was established.  Western Skyways cross-appeals, arguing that the Board erred in finding a likelihood of confusion and rejecting its alternative defense under <u>Morehouse Mfg. Corp. v. J.</u>

Strickland & Co., 407 F.2d 881 (C.C.P.A. 1969).[1]  Because the Board's findings were supported by substantial evidence and free of legal error, its decision is in all respects affirmed.

## BACKGROUND

Teledyne sells aircraft engines under the mark CONTINENTAL, but since 1991, it has used the mark GOLD SEAL for ignition harnesses.  An ignition harness is an essential part of an aircraft piston engine that transmits electrical energy from the magneto to the sparkplugs.  It is often sold with an engine, but it can also be sold as a separate part.  Teledyne registered GOLD SEAL for "airplane parts, namely ignition harnesses" on December 26, 1995 (Reg. No. 1,943,566).  Teledyne's mark appears on its harnesses as a small rectangular sticker with "TCM GOLD SEAL" or "TCM G-S" in dark blue lettering on a gold background.

Western Skyways was formed by former employees of a defunct entity that rebuilt and sold aircraft engines under the mark GOLD SEAL from the mid-1950s until it dissolved in 1986.  Western Skyways owns incontestable registrations of the mark GOLD SEAL for aircraft logbooks (Reg. No. 1,925,425) and aircraft engine overhaul and reconditioning services (Reg. No. 2,275,239).  In 1994, it began using the same mark on rebuilt and overhauled aircraft engines.  On both the logbook and the engine itself, it places an oval sticker with "Western Skyways Gold Seal Aircraft Engines" printed in black on a gold background.  Western Skyways has rebuilt engines originally

---

[1]  A Morehouse defense may be asserted when the trademark owner also owns prior registrations for the same or substantially identical mark and the same or substantially identical good and/or services as the currently challenged registration.

manufactured by Teledyne and has also used Teledyne's GOLD SEAL ignition harnesses as replacement parts.

On June 23, 1997, Western Skyways filed its trademark application for GOLD SEAL for "aircraft engines;" it was registered on March 2, 1999. Teledyne filed a petition for cancellation over three years later, on October 18, 2002. Western Skyways asserted various affirmative defenses in its answer filed on February 21, 2003. The parties subsequently submitted briefs but did not request a hearing.

On February 2, 2006, the Board issued its decision. The Board found that, notwithstanding its failure to properly introduce its own registered mark into the record, Teledyne established that it was the senior user of GOLD SEAL. Teledyne, slip op. at 5-9. The Board then found that (1) the marks were identical, which weighed heavily in Teledyne's favor; (2) the proffered third party registrations of GOLD SEAL marks on tires, hose clamps and spring brake actuators were entitled to little probative value; (3) the goods were "distinctly different," but aircraft engines and ignition harnesses were commercially related, which weighed in Teledyne's favor; (4) the channels of trade were similar, which weighed in Teledyne's favor; (5) although there was an overlap in the purchasers, the conditions of sale and the sophistication of the purchasers weighed in favor of Western Skyways; and (6) the fact that there was no evidence of actual confusion during ten years of overlapping use weighed in favor of Western Skyways. Id., slip op. at 9-17. The Board observed that any doubt was resolved in favor of the prior user and concluded that a likelihood of confusion had been established. Id., slip op. at 18.

As for the affirmative defenses, the Board rejected Western Skyways' Morehouse defense, reasoning that the prior registrations were for identical marks but the goods and services at issue were clearly different. Id., slip op. at 18-20. As for laches, the Board found that Teledyne did not assert its rights until October 18, 2002 (although constructive notice was provided when the disputed registration issued on March 2, 1999) and proffered no explanation for the three-year delay; in the meantime, Western Skyways had invested in its GOLD SEAL mark. Id., slip op. at 20-28. Although Teledyne argued there was inevitable confusion, which rendered the laches defense inapplicable, the Board disagreed. While the goods were commercially related, they were "hardly identical;" moreover, the sophistication of the purchasers and the lack of actual confusion weighed against a finding that confusion was inevitable. Id., slip op. at 28-30. For these reasons, the Board dismissed Teledyne's petition for cancellation.

Timely notices of appeal and cross-appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B).

## DISCUSSION

We review the Board's legal conclusions de novo. On Line Careline, Inc. v. Am. Online, Inc., 229 F.3d 1080, 1084 (Fed. Cir. 2000). Factual findings are reviewed in accordance with the Administrative Procedure Act, 5 U.S.C. § 706, and must be upheld if supported by substantial evidence. Dickinson v. Zurko, 527 U.S. 150, 152 (1999); Recot, Inc. v. Becton, 214 F.3d 1322, 1327 (Fed. Cir. 2000). Substantial evidence means "more than a mere scintilla," in other words, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. Nat'l Labor Relations Bd., 305 U.S. 197, 229 (1983).

Whether a likelihood of confusion exists is a question of law based on underlying factual determinations. On-Line Careline, 229 F.3d at 1084; In re E.I. DuPont DeNemours & Co., 476 F.2d 1357, 1361 (C.C.P.A. 1973) (listing the various factors to be considered).[2] We, like the Board, resolve any doubts about the likelihood of confusion against the junior user of the mark. In re Chatam Int'l, Inc., 380 F.3d 1340, 1345 (Fed. Cir. 2004).

On cross-appeal, Western Skyways argues that the Board's conclusion that there was a likelihood of confusion was based on several factual errors. Specifically, it asserts that (1) the marks were not identical notwithstanding Teledyne's use of GOLD SEAL in standard block letters because it was preceded by "TCM;" (2) the trade channels are not similar; and (3) the sophistication of the purchasers should have been accorded more weight. In response, Teledyne counters that the Board failed to adequately account for the fact that the same engine displays both GOLD SEAL marks when Western Skyways uses its ignition harness as a replacement part.

---

[2]    These factors are: (1) the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression; (2) the similarity or dissimilarity and nature of the goods or services as described in an application or registration or in connection with which a prior mark is in use; (3) the similarity or dissimilarity of established, likely-to-continue trade channels; (4) the conditions under which and buyers to whom sales are made, i.e., "impulse" vs. careful, sophisticated purchasing; (5) the fame of the prior mark (sales, advertising, length of use); (6) the number and nature of similar marks in use on similar goods; (7) the nature and extent of any actual confusion; (8) the length of time during and conditions under which there has been concurrent use without evidence of actual confusion; (9) the variety of goods on which a mark is or is not used (house mark, "family" mark, product mark); (10) the market interface between applicant and the owner of a prior mark; (11) the extent to which applicant has a right to exclude others from use of its mark on its goods; (12) the extent of potential confusion, i.e., whether de minimis or substantial; and (13) any other established fact probative of the effect of use. Id.

We are not persuaded. The Board's factual findings were supported by substantial evidence. First, there were numerous instances in the record, i.e., in marketing brochures and other promotional materials, where Teledyne's products were called GOLD SEAL ignition harnesses without the "TCM." Second, while Western Skyways may be correct that the goods are not sold in the same channels of trade, the Board did not reversibly err in finding that aircraft engines and aircraft engine parts are commercially related and sold in similar channels of trade. Indeed, in a broader sense, an aircraft engine is itself a replacement part for an airplane. Third, the Board explicitly recognized that purchasers were likely to be sophisticated and gave this factor due consideration. In weighing the various DuPont factors, some favoring Teledyne and others favoring Western Skyways, we agree that a likelihood of confusion was established, especially since any doubt is resolved in favor of the prior user.

As for laches, this is an equitable defense and the Board's ruling is reversible only for abuse of discretion. Bridgestone/Firestone Research, Inc. v. Auto. Club de L'ouest de la France, 245 F.3d 1359, 1361 (Fed. Cir. 2001). Where there is inevitable confusion, however, the court should decline to apply laches to protect the public interest. Ultra White Co., Inc. v. Johnson Chem. Indus., Inc., 465 F.2d 891, 893 94 (C.C.P.A. 1972).

Teledyne argues that the Board abused its discretion in applying laches because Western Skyways adopted GOLD SEAL in bad faith. It further contends that the Board erred in failing to find inevitable confusion.

We disagree. The Board found that Teledyne proffered no explanation for the three-year delay in asserting its rights. Instead, it placed all its proverbial eggs in the

"inevitable confusion" basket. As indicated above, several of the DuPont factors weighed in favor of Western Skyways and we discern no error in the Board's conclusion that confusion was not inevitable. Moreover, there was no evidence in the record that Western Skyways acted in bad faith or deliberately copied the GOLD SEAL mark from Teledyne, rather than adopting the mark used by the previous incarnation of Western Skyways. The Board therefore did not abuse its discretion or otherwise err in applying laches. In light of this ruling, we need not and do not address whether the Morehouse defense was properly rejected.

We have considered the remaining arguments made and find them to be without merit. Accordingly, we reject both the appeal and the cross-appeal. The Board's denial of Teledyne's petition for cancellation is therefore affirmed.