**TILLAMOOK COUNTRY SMOKER, INC., an Oregon corporation Plaintiff,**

v.

**TILLAMOOK COUNTY CREAMERY ASSOCIATION, an Oregon cooperative corporation, Defendant.**

No. Civ. 02–1540–MO.

United States District Court, D. Oregon.

July 28, 2004.

See also 311 F.Supp.2d 1023.

Brenna Kristine Legaard, Charles D. McClung, J. Peter Staples, Chernoff Vilhauer McClung & Stenzel, LLP, Portland, OR, for Plaintiff.

James C. Edmonds, Clark Lindauer Fetherston Edmonds, Salem, OR, for Defendant.

## OPINION

MOSMAN, District Judge.

In this trademark case, the court is asked to decide whether plaintiff Tillamook Country Smoker ("Smoker") may register certain trademarks with the Patent and Trademark Office ("PTO"). Defendant Tillamook County Creamery Association ("Creamery") argues that registration is inappropriate because the marks at issue present a likelihood of consumer confusion as to defendant's registered marks for the word "Tillamook." Smoker argues that it has full rights in the use of its marks and thus may formally register them. Both sides have moved for summary judgment. Because the court holds Creamery cannot prevent Smoker from registering the marks, defendant Creamery's motion for summary judgment is DENIED (doc. # 110), while plaintiff Smoker's motion is GRANTED (doc. # 117).

## I. BACKGROUND

On April 1, 2004, the court issued an order in this case holding that laches barred Creamery from challenging Smoker's use of the phrase "Tillamook Country Smoker" to sell its smoked-meat products. See 311 F.Supp.2d 1023 (D.Or. 2004). The court also held that Smoker could not use the mark "Tillamook Jerky," because such use would infringe Creamery's marks. The parties also raised issues related to Smoker's federal registration of the mark "Tillamook Country Smoker." The court ordered supplemental briefing on the registration issues and heard oral argument. Because familiarity with the court's prior order is presumed, the court sets out only those facts bearing on resolution of the registration issues.

As early as 1918, Creamery began using the word mark "Tillamook" in connection with dairy products. Tillamook is the name of the county where Creamery is based. The company obtained federal registration for marks using "Tillamook" in 1921 and then again in 1950. Using the mark "Tillamook," Creamery has spent countless millions promoting its products

and has grown to one of the nation's most successful dairy-food companies.

In 1975, Crawford Smith, then a member of Creamery, entered the smoked-meat business. He decided to give the new business the name "Tillamook Country Smoker." Concerned about Creamery's reaction to his use of that name, Smith approached Creamery's then-president, Beale Dixon, to discuss the issue. Dixon stated he had no objection to the new company's use of "Tillamook Country Smoker," as long as Smith did not "build a cheese plant." Dixon agreed he would steer clear of the cheese market and commenced using "Tillamook Country Smoker" to sell smoked meats.

In 1975, Smoker designed its first label which prominently featured the mark "Tillamook Country Smoker." While Smoker has used over twenty-five different labels since 1975, it consistently has featured the phrase "Tillamook Country Smoker" on those labels.

After having used the mark for about ten years, in a letter dated January 6, 1985, Smoker sought permission from Creamery to register with the PTO "Tillamook Country Smoker." Never having received a response from Creamery, Smoker initiated registration proceedings before the PTO, applying for registration of the mark in September 1985. A couple months later, the PTO denied Smoker's application for registration, citing Creamery's prior-registered marks for "Tillamook" in support of its conclusion that "Tillamook Country Smoker" would give rise to a likelihood of consumer confusion.

Despite the PTO's 1985 denial, Smoker continued to use the mark, without objection from Creamery. Millions of dollars

and a decade later, Smoker, in 1995, tried again to register with the PTO "Tillamook Country Smoker." This time, Smoker coupled the word mark with a "design" element. Specifically, Smoker sought to register "Tillamook Country Smoker" in connection with a particular label design the parties refer to as the "ribbon design." That design prominently displays the word "Tillamook," in larger font size than the words "Country Smoker," and the words appear in connection with a "wrap-around ribbon" and a large number one. Smoker sought registration of the mark so it could use the mark to sell "processed meats sold refrigerated and unrefrigerated as snack foods."

On October 29, 1996, the PTO published the ribbon-design mark for opposition; no opposition was filed. The PTO thus eventually granted Smoker's application and registered the ribbon-design mark on January 21, 1997.

A couple years later, Smoker hired a brand expert to help it develop a more successful brand image. As part of that effort, Smoker redesigned its labels. Smoker created and began using what the parties call the "circle T design." The circle T is what it sounds like, a large T with a circle around it, like a cattle brand. The circle T is used in connection with the word mark "Tillamook Country Smoker." Although since 1997 the large majority of Smoker's products have been marketed under this circle T design, Smoker has continued to use the ribbon design for a small percentage of its sales.

In a demand letter dated September 1, 2000, Creamery for the first time expressly objected to Smoker's use of "Tillamook Country Smoker."[1] In addition, almost

---

1. As the court discussed in its prior order, Creamery essentially proffers two reasons for why it waited until 2000 to object expressly about the use of "Tillamook Country Smoker": First, Smoker had only begun using the "circle T" packaging design in the late '90s. And, second, Smoker had begun during that time period to market its meat products more aggressively to main-line grocery stores.

four years after the PTO published for opposition the ribbon-design mark, Creamery, on September 20, 2000, initiated cancellation proceedings, asking the PTO to cancel the ribbon-design mark's registration. To this date, that mark has not been canceled.

Aside from the PTO proceedings involving the ribbon-design mark, separate registration proceedings also are at issue in this case. On September 21, 1999, Smoker filed another registration application with the PTO. As it did with respect to the 1995 application for registration, Smoker sought registration to use the mark "Tillamook Country Smoker" for "processed meats and refrigerated and unrefrigerated as snack foods." Smoker sought to register just the word mark "Tillamook Country Smoker," without any design element. That is, unlike the 1995 registration of "Tillamook Country Smoker" which was specifically in connection with the ribbon design, the 1999 application for registration excluded any particular design and listed only the words "Tillamook Country Smoker."

As part of its 1999 application for "Tillamook Country Smoker," Smoker's president, Mr. Smith, filed an affidavit averring he was unaware of any mark "in such near resemblance" to Smoker's mark as to cause a likelihood of consumer confusion. Smoker did not mention the PTO's 1985 refusal to register "Tillamook Country Smoker." The PTO examining attorney initially conditioned approval upon Smoker's dropping the geographic term "Tillamook." In response, Smoker argued that "Tillamook," as used in conjunction with "Country Smoker," had become distinctive of Smoker's meat products.

Eventually, the PTO examining attorney approved Smoker's application for the word mark "Tillamook Country Smoker." On June 18, 2002, the PTO published the mark for opposition. On July 16, 2002, Creamery filed objections with the PTO, arguing that registration of the word mark would cause consumer confusion in light of Creamery's long prior use of the word "Tillamook." To this date Smoker's word-only mark has not been registered.

Unable to resolve the dispute themselves, Smoker filed this lawsuit in September 2002. Among other things, Smoker sought a declaratory judgment protecting its right to register both the ribbon-design mark and the word-only mark.

As mentioned, Creamery moves for summary judgment against Smoker's registration-based claims. It argues that, as a matter of law, registration of the marks at issue will cause a likelihood of consumer confusion, thus making registration inappropriate.

Smoker also moved for summary judgment arguing that, as a matter of law, Creamery can neither successfully cancel the ribbon-design mark nor oppose registration of the word-only mark. Smoker argues that Creamery is precluded from challenging registration because Creamery has made representations in this litigation which directly contradict its arguments against registration. Smoker additionally relies on the doctrines of laches and acquiescence. In connection with these arguments in support of registration, Smoker invokes the trademark doctrine known as the "prior registration defense."

## II. JURISDICTION

In the Lanham Act, Congress expressly gave courts authority over PTO registration issues involving trademarks:

In any action involving a registered mark the court may determine the right to registration, order the cancellation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the

registrations of any party to the action. Decrees and orders shall be certified by the court to the Commissioner, who shall make appropriate entry upon the records of the Patent and Trademark Office, and shall be controlled thereby.

15 U.S.C. § 1119. The Act thus expressly allows the court to order cancellation of the ribbon-design mark, if appropriate under the particular circumstances presented. See, e.g., McCarthy on Trademarks § 30.109 ("a registration may be collaterally attacked in any civil action where validity of the mark is in issue.").

While the Act does not expressly allow a court to *order* registration of an unregistered mark, see *In re Fortex Indus., Inc.*, 18 U.S.P.Q.2d 1224, 1226 (Comm'r Pat. & Trademarks 1991), courts generally presume that the statute confers such authority. See, e.g., *Massa v. Jiffy Prods. Co.*, 240 F.2d 702, 707 (9th Cir.1957). Moreover, the court believes that, read as a whole, Section 1119 of the Lanham Act contemplates that courts may, in appropriate cases, order registration of a mark. Accordingly, in addition to having the authority to consider Creamery's request that the court cancel the registered mark for the ribbon design, the court also has authority to consider Smoker's request that the court order registered the word mark "Tillamook Country Smoker." In finding the latter authority, the court emphasizes that there do not appear to be any objecting non-parties whose rights would be affected by the registration of Smoker's mark, which the PTO previously published for public opposition. The court thus turns to the merits.

## III. DISCUSSION

### A. Use vs. Registration

■ For purposes of context, it is helpful to discuss briefly the differences between use of a mark and actual registration of that same mark. Nonregistration of a mark does not generally undermine one's state or federal rights in a mark; "it is use, not registration, that creates the underlying exclusive right to a mark." McCarthy on Trademarks § 19.3. At the same time, "trademark registration of itself *does not create the underlying right to exclude."* *Gilbert/Robinson, Inc. v. Carrie Beverage–Mo., Inc.*, 989 F.2d 985, 991 (8th Cir.1993) (citation omitted) (emphasis in original); see also *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 815 (1st Cir.1987) ("Trademark rights do not generally arise from registration."). In short, registration does not give a trademark holder unfettered license to expand use into new markets and create new trademark designs.

Registration, however, is qualitatively different from mere use. See *National Cable Tel. Ass'n, Inc. v. American Cinema Editors, Inc.*, 937 F.2d 1572, 1580 (Fed. Cir.1991) ("It is true that a registration on the principal register is recognition of the registrant's right to use its mark, but it is substantially more than that." (citation omitted)). That is because registration of a trademark triggers certain substantive and procedural rights which do not exist by virtue of use alone.[2]

■ In addition to providing some context, understanding the difference between use and registration has a direct effect on the parties' arguments. Specifically,

---

**2.** Some of the rights specially conferred on registered trademarks include the following: availability of treble damages and attorney fees; prima facie evidence of a mark's validity, the registrant's ownership and exclusive use of the mark; and constructive notice of registrant's ownership so as to defeat any claim of good faith asserted by other users. See generally McCarthy on Trademarks § 19:9.

Smoker argues it is entitled to registration under the doctrines of laches and acquiescence. In making this argument, Smoker measures the passage of time from Smoker's initial use of "Tillamook Country Smoker," which first occurred in 1975. As the court held in its prior order, the doctrine of laches prohibits Creamery from objecting to Smoker's *use* of the word mark. While Smoker suggests that a similar analysis applies when considering the registration issues, Creamery argues that the relevant time period must be measured not from use but from the date when Creamery first could have objected to federal registration.

The court agrees with Creamery. The Federal Circuit has considered this precise issue and held that laches must be treated differently for purposes of registration:

> "Appellant was clearly under no duty to attack appellee's right to use the mark if it did not choose to do so, on penalty of being deprived of the right to oppose an application to register. It could not take the latter action, of course, until after appellee applied for registration and the application was published for the purpose of opposition."

*National Cable Tel.*, 937 F.2d at 1580 (quoting *Salem Commodities, Inc. v. Miami Margarine Co.*, 44 C.C.P.A. 932, 244 F.2d 729, 732 (Cust. & Pat.App.1957)); see also *Lincoln Logs. Ltd. v. Lincoln Pre–Cut Log Homes, Inc.*, 971 F.2d 732, 734 (Fed. Cir.1992) ("As applied in trademark opposition or cancellation proceedings, these defenses [laches and estoppel] must be tied to a party's registration of a mark, *not*

to a party's use of the mark." (emphasis in original)). Thus, contrary to Smoker's argument, for purposes of objecting to registration, the relevant time period did not begin to run until the marks were published for opposition, which, in this case, occurred in late 1996 and 2002. Given that Smoker's laches and acquiescence arguments are based on the time of its use of the marks, the court rejects its laches and acquiescence defenses.[3]

## B. Creamery's "No Infringement" Position

Smoker argues it would be inequitable to permit Creamery to argue that registration of the marks would violate Creamery's trademark rights in light of the contradictory nature of one of Creamery's core arguments made throughout this litigation. Specifically, Creamery has consistently maintained that Smoker's use of "Tillamook Country Smoker" did not infringe until the late '90s, when Smoker began using the circle T packaging design. Smoker posits that Creamery was forced to take this position in an attempt to avoid application of laches, given Smoker's decades-long use of that mark. According to Smoker, Creamery's central argument— that there was no violation of its rights until the late '90s—sharply contradicts Creamery's arguments made in opposing registration—that allowing registration of Smoker's "Tillamook Country Smoker" marks would be inappropriate because the marks give rise to a likelihood of consumer confusion.

---

**3.** The court notes that Creamery waited almost four years before objecting to the ribbon-design application. Although such a delay might have been unreasonable in this case, cf., e.g., *Turner v. Hops Grill & Bar, Inc.*, 52 U.S.P.Q.2d 1310 (Trademark Tr. & App. Bd. 1999) (finding unreasonable, for laches purposes, five-year delay from date of publication because delay in challenging registration was "clearly substantial"), the court does not decide whether Creamery unreasonably delayed before seeking cancellation. First, Smoker does not argue that the delay as measured from publication was unreasonable. Moreover, the issue need not be decided because Smoker has a right to register the marks for other reasons, as discussed in this order.

As a threshold matter, the court agrees that Creamery's arguments cannot be reconciled in a meaningful way. In making this assessment, it is important to bear in mind the standards which govern both an infringement action and a registration proceeding before the PTO. As is the case in most registration proceedings, the ultimate issue on the merits presented here is whether allowing registration of Smoker's marks likely will "cause confusion." See 15 U.S.C. § 1052. In seeking to cancel the ribbon-design mark and opposing registration of the word-only mark, Creamery does indeed argue that registration of those marks will likely cause confusion in light of Creamery's rights in "Tillamook." See, e.g., Creamery's (Second) Summary Judgment Brief at 2 ("[Smoker's] marks are likely to cause confusion with [Creamery's] senior registered marks, and as a result, they cannot be registered.").

An infringement action presents the same core issue as that presented in registration proceedings: "The core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products." *E & J Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir.1992). In previously moving for summary judgment against Smoker, Creamery's core argument indeed was that Smoker's *use* of " 'Tillamook' causes a likelihood of confusion," as a matter of law. See Creamery's (First) Summary Judgment Brief at 9. But, Creamery argued, Smoker's infringement did not occur until after 1997 when Smoker began direct selling to grocery stores and using the circle T design. According to Creamery's prior arguments, then, mere use of "Tillamook Country Smoker," as part of the ribbon design or otherwise, does not create a likelihood of confusion. Thus, on the one hand, Creamery argues—in opposing registration—that use of "Tillamook Country Smoker" in connection with meat snacks likely will cause confusion; but, on the other hand, in its prior opposition to application of laches, Creamery argued that mere use of "Tillamook Country Smoker" in connection with meat snacks did not create a risk of confusion.

In sum the court finds inconsistency between Creamery's prior arguments in seeking to avoid laches and its current arguments made in opposing registration. The more difficult issue is whether that inconsistency makes a difference to resolution of the issues before the court.

### 1. Effect of Court's Prior Ruling

Creamery essentially responds that its prior arguments, however one may characterize them, are irrelevant in light of the court's prior holding on laches. As mentioned, in an order dated April 1, 2004, the court held that, as a matter of law, the laches doctrine precludes Creamery from challenging Smoker's use of "Tillamook Country Smoker," in connection with Smoker's meat products. According to Creamery, the court's laches ruling necessarily found that Smoker's longstanding use of "Tillamook Country Smoker" infringes Creamery's marks. In other words, Creamery contends, there can be no laches finding without a threshold finding of likelihood of confusion. Accordingly, as the court construes Creamery's argument, it is now the "law of the case" that Smoker's use of its marks infringes Creamery's rights. Creamery, therefore, contends that the court effectively decided in its April 1 order that the marks at issue cannot be registered, because only marks which do not infringe existing marks may be registered with the PTO.

The law-of-the-case doctrine applies only if "the issue in question [was] 'decided explicitly or by necessary implication' in the previous disposition." *United States v. Lummi Indian Tribe*, 235 F.3d

443, 452 (9th Cir.2000) (quoting *Liberty Mut. Ins. Co. v. EEOC,* 691 F.2d 438, 441 (9th Cir.1982)). Whether to apply the doctrine is within the trial court's discretion. *Id.*

■ The court rejects Creamery's argument. The court did not "by necessary implication" or otherwise decide that Smoker's use of "Tillamook Country Smoker" likely causes confusion. The court's laches ruling only went so far as to bar Creamery from *claiming* that use of the mark amounted to infringement. That is, Creamery's infringement argument was based on the use of "Tillamook Country Smoker." In applying laches in favor of Smoker, the court reasoned that the mark, in materially consistent form, had been in use since the mid-'70s. Creamery, therefore, was affirmatively claiming infringement based on a use which had not materially changed over the course of almost thirty years. As the court said once before, "a party cannot sue claiming conduct X is infringement when conduct X has been occurring for many years with the party's knowledge." 311 F.Supp.2d at 1032.[4] Of course, conduct X may, in effect, become conduct Y, due to a material change in use implicating progressive encroachment. But, as the court previously held, that is not the case here. Accordingly, at least under the circumstances of this case, where Creamery affirmatively claimed infringement, it was not necessary for the court to find a likelihood of confusion before applying laches. Cf., e.g., *Hubbard Feeds, Inc. v. Animal Feed Supplement,* 182 F.3d 598, 601–02 (8th Cir. 1999) (applying laches against infringement claimant while also finding that there

was insufficient evidence of consumer confusion); *Prudential Ins. Co. of Am. v. Gibraltar Fin. Corp.,* 694 F.2d 1150, 1153–55 (9th Cir.1982) (applying laches against infringement claimant while also holding there was no support for finding consumer confusion). To accept Creamery's argument would allow a user to file a meritless infringement claim against a longstanding user and, in turn, rely on a laches holding to say the court found infringement, thereby producing ammunition for registration or other challenges.

The court thus rejects Creamery's argument that the prior ruling found confusion likely to occur. That is not to say that confusion is not likely to occur as a result of Smoker's use of "Tillamook Country Smoker," but just to say that the court did not, and need not, decide that issue in this litigation. The court, therefore, next considers Smoker's argument that registration is appropriate because, by Creamery's own admissions, mere use of "Tillamook Country Smoker" does not violate its trademark rights.

### 2. Creamery's Conclusive Admission

■ Smoker argues that Creamery's responses to Smoker's requests for admission conclusively establish that use of the marks at issue do not likely cause confusion. In making this argument, Smoker relies on the following discovery exchange:

*Request for Admission No. 79:* [Creamery] alleges that [Smoker's] activities between 1995 and 2000 violated [Creamery's] rights in TILLAMOOK.

*Response: . . . . Defendant admits that [Smoker's] activities began violating*

---

**4.** In arguing that the court previously found infringement, Creamery relies on the following statement from the court's April 1 order: "the facts forming the crux of Creamery's infringement *claim* against Smoker have existed for almost thirty years." 311 F.Supp.2d at 1032 (emphasis added). That statement is entirely consistent with the idea that the laches analysis in this case should be judged according to the alleged "Conduct X" upon which Creamery relied to assert an affirmative claim of infringement.

*[Creamery's] rights in the word TILLA-MOOK at some point in the latter part of the stated time period.*

(Emphasis added). Based on this admission, Smoker argues that Creamery in effect admitted that Smoker did not infringe Creamery's trademark rights before the late '90s.

But, as Smoker is quick to point out, it began using the ribbon-design mark—the subject of Creamery's cancellation request—in 1988, relying almost exclusively on that mark from 1988 until 1996. In addition, Smoker has used the word mark "Tillamook Country Smoker"—the subject of the second registration proceeding—since the 1970s. It has used "Tillamook Country Smoker" on over twenty-five different labels. Creamery has never argued that any of Smoker's labels, aside from the use of the word "Tillamook," are otherwise similar to Creamery's labels.

With this background in mind, accepting Creamery's admission—that Smoker's longstanding use of "Tillamook Country Smoker" did not violate Creamery's rights—undercuts Creamery's burden to show that registration of "Tillamook Country Smoker" will likely cause confusion. The issue, then, is whether the court *must* accept Creamery's admission in deciding whether Smoker may register its marks.

The rule for decision is found in the Federal Rules of Civil Procedure. Rule 36, in pertinent part, provides:

(a) *Request for Admission.* A party may serve upon any other party a written response for the admission ... of the truth of any matters within the scope of Rule 26(b)(1) set forth in the request that relate to statements or opinions of fact *or the application of law to fact* ....

(b) *Effect of Admission.* Any matter admitted under this rule is *conclusively established* unless the court on motion

permits withdrawal or amendment of the admission....

Fed.R.Civ.P. 36 (emphasis added). Thus "Rule 36 allows litigants to request admissions as to a broad range of matters, including ultimate facts, as well as applications of law to fact." *In re Carney,* 258 F.3d 415, 419 (5th Cir.2001); see, e.g., *999 Corp. v. C.I.T. Corp.,* 776 F.2d 866, 868–69 (9th Cir.1985) (enforcing admission stating there was "an agreement" even though whether an agreement existed was an ultimate issue in case); *Cereghino v. Boeing Co.,* 873 F.Supp. 398, 401 (D.Or.1994) (enforcing admission that contamination was not caused by defendant company even though determining causation in contamination cases "is often impracticable"). The plain purpose of the rule is to expedite resolution of litigation by "narrowing the range of issues" left for decision. *Asea, Inc. v. Southern Pac. Transp. Co.,* 669 F.2d 1242, 1245 (9th Cir.1981). In light of the judicial efficiency this purpose seeks to serve, the court should not consider evidence "inconsistent with a Rule 36 admission." *999 Corp.,* 776 F.2d at 870; see also *American Auto. Ass'n v. AAA Legal Clinic,* 930 F.2d 1117, 1120 (5th Cir.1991) ("An admission that is not withdrawn or amended cannot be rebutted by contrary testimony or ignored by the district court simply because it finds the evidence presented by the party against whom the admission operates more credible."); Advisory Committee Notes, at 48 F.R.D. 487, 534 (1970) ("Unless the party securing an admission can depend on its binding effect, he cannot safely avoid the expense of preparing to prove the very matters on which he has secured an admission, and the purpose of the rule is defeated."). In addition, while a party may move to withdraw or amend a Rule 36 admission, district courts must be "cautious in exercising their discretion to permit withdrawal or amendment." *999 Corp.,* 776 F.2d at 869.

In this case, Creamery has not asked the court to amend or withdraw the admission at issue. Indeed the admission comports with the theory of the case Creamery has advocated throughout these proceedings, namely, that Smoker did not infringe Creamery's trademark rights until after 1997.[5] As already indicated, the court concludes that this prior position—which was taken in opposition to Smoker's laches defense—is inconsistent with Creamery's current position that mere use of "Tillamook Country Smoker" causes consumer confusion and thus should not be registered. Based on Rule 36's clear mandate, Creamery is conclusively bound to its admission that use of "Tillamook Country Smoker" did not violate Creamery's rights until sometime in the late '90s, when Smoker began using the circle T design.

Given that admitted proposition, there plainly is no basis for denying registration of the ribbon-design mark. As early as 1988, Smoker used the ribbon design on most of its packaging. Thus, because Creamery's admission requires the court to conclude Smoker did not violate Creamery's rights until the late '90s, maintaining registration of the ribbon design does not violate the Lanham Act.

In addition, registration of the word-only mark "Tillamook Country Smoker" is appropriate, in light of Creamery's admission that mere use of that phrase does not violate Creamery's rights. Given Smoker's almost thirty-year use of that mark on its packaging, Creamery's in-fringement argument rested on Smoker's new circle T design and grocery-store marketing strategy. But, as the court ruled in its prior order, Smoker's marketing and packaging changes neither materially departed from its longstanding use of "Tillamook Country Smoker" nor made the mark *more* similar to Creamery's packaging. All that remains standing, therefore, is Creamery's current position that mere use of "Tillamook Country Smoker" will likely cause confusion. Creamery's discovery admission conclusively resolves that issue. See Fed.R.Civ.P. 36.[6] Accordingly, under the unique circumstances presented, the court concludes that it is appropriate to permit registration of Smoker's marks.

## C. Prior–Registration Defense

Creamery suggests that its discovery admission, at the very least, should not be applied to preclude opposition to registration of the word-only mark. It argues that registration of the word-only mark is different from the ribbon-design mark in at least one important respect: the word-only mark is not limited by a specific design element. Thus, according to Creamery, applying its prior admission against it as to the word-only mark would be unfair.

Even were the court to accept Creamery's distinction and allow opposition to the word-only mark, the ribbon-design mark could not be canceled, given the previously quoted discovery admission—which, as discussed *infra*, is obviously inconsistent with Creamery's current posi-

---

5. For example, Creamery made the following representations in this lawsuit:
 - "The parties agree: prior to the use of the 1997 [circle T] design, [Smoker] committed no actionable infringement.... The uses prior to the ... Circle T did not infringe." See Creamery's Summary Judgment Response at 14, 18.
 - "[Creamery] objected to [Smoker's] in-fringement of the federally registered mark Tillamook on September 1, 2000. [Creamery] had no legal obligation to object to mere use of Tillamook Country Smoker until there was infringement." See Creamery's Response to Smoker's Concise Statement of Facts.

6. Because Rule 36 applies to preclude Creamery's arguments, the court need not discuss Smoker's judicial-estoppel argument.

tion that use of the ribbon design likely will cause confusion. Because the ribbon-design mark cannot be canceled, Creamery cannot show any additional damage from the registration of the word-only mark, since Creamery's challenge to that mark, too, is based entirely on the use of the word "Tillamook." As discussed below, Creamery's opposition to the word-only mark, therefore, would be barred, in any event, by the prior-registration doctrine.

In 1969 the Court of Customs and Patent Appeals first gave life to the prior-registration doctrine. *Morehouse Mfg. Corp. v. J. Strickland & Co.*, 56 C.C.P.A. 946, 407 F.2d 881, 884 (Cust. & Pat.App. 1969). The doctrine is based on common-sense notions related to when one can show harm from a registration:

> The prior registration or *Morehouse* defense is an equitable defense, to the effect that if the opposer can not be further injured because there already exists an injurious registration, the opposer can not object to an additional registration that does not add to the injury.

*O–M Bread, Inc. v. United States Olympic Committee*, 65 F.3d 933, 938 (Fed.Cir. 1995). Thus if one opposing a mark "cannot procure the cancellation of [an] existing registration it cannot prevent the granting of [a] second registration" of effectively the same mark. *Morehouse*, 407 F.2d at 884. Given this underlying rationale, which essentially compels parties to act quickly to challenge registrations believed to be potentially harmful, the prior-registration or *Morehouse* doctrine has

been described as "an equitable defense in the nature of laches or acquiescence." McCarthy on Trademarks § 20:38.[7]

■ The *Morehouse* doctrine is not broadly applied; one invoking it must satisfy the court of the existence of two conditions: (a) the two marks are "substantially identical," and (b) the marks are for "substantially identical" goods or services. *Advance Stores Co. v. Refinishing Specialties, Inc.*, 948 F.Supp. 643, 654 (W.D.Ky. 1996) (citing *Morehouse*, 407 F.2d at 884). Only the first element, whether the marks are substantially identical, is at issue in this case.[8]

### 1. Decisions Applying Prior–Registration Doctrine

Smoker argues that the fact two marks are technically different does not inherently preclude them from being "substantially identical" for purposes of the prior-registration doctrine. Smoker's argument finds support in case law. For instance, the Trademark Board allowed registration of the word-only mark "Continental" because the holder, Continental Connector Corp., had previously registered two marks consisting of the word "Continental" accompanied by specific design elements. *Continental Specialties Corp. v. Continental Connector Corp.*, 192 U.S.P.Q. 449, 451–52, 1976 WL 21143 (Trademark Tr. & App. Bd.1976). The opposing party held rights to the phrase "Continental Specialties" and thus based its challenge to the registration of Continental Connector's three marks on the marks' use of the word "Continental."

---

7. Because the prior-registration doctrine is considered one in the nature of laches or acquiescence, the court concludes that Smoker's answer, which mentions laches and acquiescence, encompasses the prior-registration doctrine. The court reaches this conclusion in large part because there is no real prejudice to Creamery here, because, as discussed *infra*, the prior-registration issue in this case can be decided as a matter of law, without need for any further fact finding. Moreover, Creamery has had ample opportunity to discuss the legal issues implicated by that doctrine.

8. Both marks were for identical goods, "processed meats and refrigerated and unrefrigerated as snack foods."

The Trademark Board concluded that the challenged marks all created the "same commercial impact," even though the two previously registered marks had design elements. *Id.* Similarly, in the only federal court case involving the prior-registration doctrine cited by the parties, the court allowed registration of the word mark "Advance Auto Parts," because the mark's holder had rights in prior registrations for that word mark in conjunction with specific design elements. *Advance Stores Co.,* 948 F.Supp. at 654. The district court reasoned:

> Plaintiff uses "Advance Auto Parts" in all three of its registrations. The only difference between earlier and later marks is the design element. According to past cases, the mere stylization of a name, or the addition of a design element, is not enough to defeat the *Morehouse* defense. See, e.g., *S & L Acquisition Co. v. Helene Arpele, Inc.,* 9 U.S.P.Q.2d 1221, 1225–26, 1987 WL 123899 (Trademark Tr. & App. Bd.1987).

*Id.*

In another case, the Trademark Board applied *Morehouse* and allowed registration of the word mark "Hollywood" in light of the holder's prior registration of the more specific mark "Hollywood Health Foods." *National Bakers Services, Inc. v. Hain Pure Food, Inc.,* 207 U.S.P.Q. 701, 706–07, 1980 WL 30150 (Trademark Tr. & App. Bd. 1980). Phrasing the key question as "how would the purchasing public consider such marks," when used in connection with the same product, the Trademark Board concluded that consumers would perceive both marks as conveying simply the word "Hollywood." *Id.* at 707, 1980 WL 30150. That is, consumers would find marks "projecting the same image and symbolizing a single and continuing commercial impression." *Id.*

The court makes note of one other decision relied upon by Smoker, *The Place for Vision, Inc. v. Pearle Vision Center, Inc.,* 218 U.S.P.Q. 1022, 1983 WL 51990 (Trademark Tr. & App. Bd. 1983). In *Pearle Vision,* unlike in the case at bar, a word-only mark—"Vison Center"—was the prior registered mark, and the subsequent, unregistered mark—"Pearle Vision Center and Design"—included a specific design element. Thus, as Creamery points out, *Pearle Vision* is distinguishable from the case at bar. But the Trademark Board's analysis in *Pearle Vision* is notable for its emphasis on the fact the opposer's challenge was based on the dominant feature shared by both marks, the words "Vision Center." Thus the difference between the two marks was immaterial for purposes of applying the prior-registration doctrine. See *id.* (applying prior-registration defense "because opposer's claim of damage relates only to the 'Vision Center' portion of applicant's mark and not to the 'Pearle' and design portions of the mark").

In summary, decisions applying the prior-registration doctrine indicate that whether two marks are "substantially identical" turns in part on whether consumers would find that each mark conveys the same commercial impression. Another relevant factor suggested by the decisions is whether the opposition to the two marks is based entirely on a dominant feature shared by the prior registered and currently opposed marks. When the differences between the registered and currently unregistered marks do not meaningfully contribute to the challenger's alleged harm, it makes little sense to allow the challenging party to defeat registration of the second mark. Focusing on marketplace impressions and the basis for the registration challenge makes sense in light of the primary reason underlying *Morehouse:* an opponent should not be allowed to challenge registration when it will not cause the opponent to suffer any additional harm.

### 2. Application to This Case

 As discussed, Creamery cannot now claim that the ribbon-design mark will likely cause confusion, in light of its previous inconsistent position taken in this lawsuit. As a result, assuming that Creamery's previous position does not preclude it from attacking registration of the word-only mark, the issue is whether that mark is substantially identical to the registered ribbon-design mark for purposes of the prior-registration doctrine. Under the circumstances of this case, the court concludes they are.

The ribbon design's dominant feature is the use of "Tillamook Country Smoker," and, of course, the only feature of the word-only mark is the identical phrase "Tillamook Country Smoker." Cf. *O–M Bread, Inc.*, 65 F.3d at 938–39 (holding that word mark "Olympic" was not sufficiently similar to "Olympic Kids" for purposes of satisfying *Morehouse* ). Consumers "encountering these marks in the marketplace used to identify the identical product" would find marks "projecting the same image and symbolizing a single and continuing commercial impression." *National Bakers Servs., Inc.*, 207 U.S.P.Q. at 707. Most significant, Creamery's challenge from the outset has been based solely on the use of the word "Tillamook," a word prominently displayed on the ribbon-design packaging. Thus, confining registration to the ribbon-design mark serves only to limit unnecessarily Smoker's rights without also protecting

Creamery in any way from the alleged source of its harm, the use of the word "Tillamook." Under these circumstances, the court is persuaded by Smoker's prior-registration defense.[9] .

### 3. Unclean Hands

 Creamery argues that, even assuming Smoker can satisfy the elements of an equitable defense such as the prior-registration defense, Smoker comes to the court with unclean hands . and thus is barred from equity. Creamery's argument is based on the PTO's 1985 denial of Smoker's application to register "Tillamook Country Smoker." As mentioned, the PTO · denied registration because it found a likelihood of confusion between Smoker's mark and Creamery's "Tillamook" marks. · According to Creamery, because Smoker did not later disclose the 1985 denial to the PTO when applying for registration of the ribbon-design and word-only marks, in 1995 and 1999, Smoker is not an · innocent user entitled to invoke equity.

Under the circumstances of this case, it would be inappropriate to bar Smoker from proceeding in equity. As more fully discussed in · the court's prior opinion, Creamery over ·the years actively encouraged and benefited from Smoker's product sales, all of which were made under the mark "Tillamook Country Smoker." Indeed, in 1975, Creamery's president consented to Smoker's use of the mark. And, more directly relevant to Smoker's failure

---

**9.** The court notes that the issue is whether the two marks, as they were presented to the PTO, are substantially identical. Thus Creamery does not argue that the ribbon-design mark should be compared to the circle T design adopted in 1997. Even assuming it would be appropriate for the court to consider facts external to the registrations, such as the use of the circle T design, the court's conclusion would be unaltered. As the court held in its April 1 order, Smoker's use of

"Tillamook" has not changed in any material way. Nor has Creamery ever argued that any other feature of Smoker's circle T labeling, aside from the use of "Tillamook," gives rise to a likelihood of confusion. Indeed, regardless of the precise design of Smoker's some twenty-five different packages, Creamery's allegations of infringement consistently have been based only on the use of the word "Tillamook." ··

to disclose the 1985 PTO denial, Smoker expressly asked for Creamery's permission to register "Tillamook Country Smoker." Creamery never responded. It was not until after another decade of joint marketing efforts had passed did Smoker again apply for registration of the ribbon-design mark. Creamery still had not objected when Smoker applied in 1999 for registration of the word-only mark. Based on the two companies' past cooperation and Creamery's silence, Smoker reasonably could have concluded that its mark was not violating Creamery's rights. This history at least neutralizes any questionable motives on the part of Smoker. The case upon which Creamery relies presents no similar circumstances. See *National Customer Eng'g, Inc. v. Lockheed Martin Corp.*, 43 U.S.P.Q.2d 1036, 1997 WL 363970 (C.D.Cal.1997) (finding "bad faith" on part of registrant, thereby precluding equitable defenses, where registrant was denied registration by PTO on confusion grounds the year registrant first began using the mark and it then continued to use the mark *without opposer's knowledge* ).

In short, given the particular facts presented, the court is not persuaded Smoker has engaged in any unconscionable conduct barring it from invoking equitable principles. Cf. *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245, 54 S.Ct. 146, 78 L.Ed. 293 (1933) (discussing unclean-hands maxim in patent case and reasoning maxim should only be applied for "the advancement of right and justice" and when "some *unconscionable act* of one coming for relief has immediate and necessary relation to the equity" sought (emphasis added)).

## D. Public Interest

On a final matter, the court acknowledges the PTO's gatekeeping role in ensuring marks are not registered which likely will cause consumer confusion. See 15 U.S.C. § 1052 (providing marks should not be registered if doing so likely will cause consumer confusion, mistakes, or deception). In light of this gatekeeping role, Creamery suggests that the court must consider the issue of whether consumer confusion likely will result, without regard for any defenses Smoker may otherwise have.

### 1. Smoker's "Legitimate" Rights

As an initial point, Creamery argues that, because Smoker's rights were acquired by laches, those rights are "illegitimate" in the eyes of the Lanham Act. Creamery, therefore, suggests that Smoker's rights to "Tillamook Country Smoker" are not worthy of registration under the Act. The court rejects that argument. When a junior user obtains the right to use a mark through the application of equitable principles such as laches, the junior user's marks "stand in parity" with the complaining senior party's marks. *SunAmerica Corp. v. Sun Life Assurance Co. of Canada*, 77 F.3d 1325, 1334 (11th Cir.1996). Accordingly, when "a senior user delays in enforcing its rights, a junior user may acquire a *valid trademark* in a related field, enforceable against even the senior user." *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 217 (2d Cir. 2003) (emphasis added). In short, in relation to one another, Creamery may seek and defend registration of its marks, and Smoker may do so as to its marks. The only issue, therefore, is whether public interest considerations nevertheless compel a ruling in Creamery's favor.

### 2. Public Interest Considerations in This Case

It is well established that "equitable principles of laches, estoppel, and acquiescence may be considered and applied in all inter partes [PTO] proceedings."

McCarthy on Trademarks § 25:51; see also *O–M Bread,* 65 F.3d at 938 (observing that "[e]quitable principles are available when justice requires"). Thus, for purposes of determining what marks can be registered, considerations of public interest are not invariably limited to the issue of consumer confusion, contrary to Creamery's contention otherwise.

In this case, the court believes that public interest considerations do not weigh against, and indeed may affirmatively favor, allowing registration of Smoker's marks. As mentioned, the court previously held that Smoker may continue to use the mark "Tillamook Country Smoker," as long as it is consistent with Smoker's historical use of the mark. As a result, from the standpoint of consumers, no substantial purpose is served by preventing registration when use of the mark, and thus the allegedly potential consumer confusion, will exist anyway.

The Court of Customs and Patent Appeals acknowledged the limitations of using registration to guard against consumer confusion:

Refusal to register cannot prevent confusion. At most, it *might* discourage further use. Refusal can, under certain circumstances, encourage potential confusion. Absence of a registration of RALLY for auto cleansers in the present case may, for example, lead others to adopt and use that or a similar mark for auto cleansers. Granting a registration will not produce confusion. Use alone can do that and neither we nor the Patent Office can grant or deny a right to use.

*In re DuPont DeNemours & Co.,* 476 F.2d 1357, 1364 (Cust. & Pat.App.1973) (emphasis in original). Moreover, as the Federal Circuit has observed, allowing use to follow registration may in some cases affirmatively serve the Lanham Act's policies: "One of the policies sought to be implemented by the Act was to encourage the presence on the register of trademarks of as many as possible of the marks in actual use so that they are available for search purposes." *Bongrain Int'l (Am.) Corp. v. Delice de France,* 811 F.2d 1479, 1485 (Fed.Cir.1987); see also *In re E.I DuPont,* 476 F.2d 1357, 1364 ("Although a naked right to use cannot always result in registration, the Act does intend ... that registration and use be coincident so far as possible."); *Gilbert/Robinson, Inc.,* 989 F.2d at 990 ("one who has gained rights in a mark by its use in commerce is entitled to a fair, even liberal, construction of the registration provisions of federal law.").

In summary, the court determines that registration of Smoker's marks is appropriate. The court believes this conclusion is all the more appropriate in light of the longstanding coexistence of the parties' marks in the marketplace, a coexistence which Creamery, with its own profits in mind, consistently encouraged.

## IV. CONCLUSION

For the foregoing reasons, the court denies Creamery's request to cancel registration of the ribbon-design mark and orders the PTO to register the word-only mark "Tillamook Country Smoker." The court, therefore, denies Creamery's motion for summary judgment (doc. # 110) and grants Smoker's motion for summary judgment (# 117).

IT IS SO ORDERED.