**O–M BREAD, INC. and Roush Products Company, Inc., Appellants,**

**v.**

**UNITED STATES OLYMPIC COMMITTEE, Appellee.**

**No. 94–1113.**

United States Court of Appeals, Federal Circuit.

Sept. 6, 1995.

---

G. Franklin Rothwell, Rothwell, Figg, Ernst & Kurz, of Washington, DC, argued for appellants. With him on the brief were Raymond A. Kurz and Christina M. Gadiano.

Mary Jane Saunders, Arter & Hadden, of Washington, DC, argued for appellee. With her on the brief was Roger P. Furey.

Before ARCHER, Chief Judge, NEWMAN and SCHALL, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

This trademark opposition[1] was filed by the United States Olympic Committee ("USOC") against the application of Roush Products Company, Inc., the successor in interest to O–M Bread, Inc., (together "Roush") to register the mark OLYMPIC KIDS for bakery goods. The application to register OLYMPIC KIDS was filed on March 5, 1991, based on the "intent to use" provision of the Trademark Act. The Trademark Trial and Appeal Board of the United States Patent and Trademark Office ("the Board") sustained the opposition, interpreting the Amateur Sports Act of 1978 to mean that Roush's grandfathered rights to continue to use its OLYMPIC marks for bread and bakery products do not extend to the registration of OLYMPIC KIDS for bakery products. We affirm the Board's decision.

### THE "OLYMPIC" STATUTES

In 1950, as part of "An Act to Incorporate the United States Olympic Association," the Association (predecessor of the USOC) was granted certain exclusive rights to use of the word "Olympic." The Act recognized the "grandfather" rights of prior users:

> § 9 *Provided, however,* That any person, corporation, or association that actually used, or whose assignor actually used, the said emblem, sign, insignia, or words ["Olympic," "Olympiad," "Citius Altius Fortius", or any combination thereof] for any lawful purpose prior to the effective date of this Act, shall not be deemed forbidden by this Act to continue the use thereof for the same purpose and for the same class or classes of goods to which said emblem, sign, insignia, or words had been used lawfully prior thereto.

Pub.L. No. 81–805, 64 Stat. 899, 902 (1950) (current version at 36 U.S.C. § 380).

The 1950 statute was succeeded by the Amateur Sports Act of 1978, Pub.L. No. 95–606, 92 Stat. 3045 (codified with some differences at 36 U.S.C. § 371 *et seq.*). Section 110(c) of the 1978 Act grants the USOC

certain exclusive rights to the use of the word "Olympic":

> § 110(c) The Corporation [USOC] shall have exclusive right to use ... the words "Olympic", "Olympiad", "Citius Altius Fortius" or any combination thereof subject to the preexisting rights described in subsection (a).

92 Stat. at 3049 (codified at 36 U.S.C. § 380(c)). Section 110(a) of the Act continues to prohibit unauthorized uses and to grandfather preexisting rights, including preexisting trademark use, and provides for remedy by civil action:

> § 110(a) Without the consent of the Corporation, any person who uses for the purpose of trade, to induce the sale of any goods or services, or to promote any theatrical exhibition, athletic performance, or competition—
>
> ....
>
> (3) any trademark, trade name, sign, symbol, or insignia falsely representing association with, or authorization by, the International Olympic Committee or the Corporation; or
>
> (4) the words "Olympic", "Olympiad", "Citius Altius Fortius", or any combination or simulation thereof tending to cause confusion, to cause mistake, to deceive, or to falsely suggest a connection with the Corporation or any Olympic activity;
>
> shall be subject to suit in a civil action by the Corporation for the remedies provided in the Act of July 5, 1946 (60 Stat. 427; popularly known as the Trademark Act of 1946) [15 U.S.C.A. § 1051 *et seq.*]. However, any person who actually used ... the words, or any combination thereof, in subsection (a)(4) of this section for any lawful purpose prior to September 21, 1950, shall not be prohibited by this section from continuing such lawful use for the same purpose and for the same goods or services. In addition, any person who actually used, or whose assignor actually used, any other trademark, trade name, sign, symbol, or insignia described in subsections (a)(3) and (4) of this section for any lawful purpose

---

1. *United States Olympic Committee v. O–M Bread, Inc.,* Opposition No. 86,739, 29 USPQ2d 1555

(Tr. Trial & App.Bd.1993).

prior to enactment of this Act shall not be prohibited by this section from continuing such lawful use for the same purpose and for the same goods or services.

92 Stat. at 3048–49 (codified with some differences at 36 U.S.C. § 380(a)). This opposition to registration of OLYMPIC KIDS was brought in accordance with this statutory provision.[2]

### THE ROUSH "OLYMPIC" TRADE-MARKS

In 1938 Roush registered the trademark OLYMPIC for bakery products including bread, asserting first use in 1931. In 1947 Roush commenced use of the trademark OLYMPIC MEAL on bread mix and other bakery products, and in 1979 registered this mark, over the opposition of the USOC, based on the grandfathered use of OLYMPIC MEAL. Roush owns two other relevant registrations, design marks for OLYMPIC MEAL and OLYMPIC MEAL SPECIAL FORMULA. None of these registered marks is at issue here, although Roush points out that the two latter registrations are based on use after the Olympic statutes were enacted, arguing that this fact supports its entitlement to register the mark OLYMPIC KIDS.

Roush's argument is that since it is authorized to use its marks containing the word OLYMPIC for bakery products, this extends to the proposed use of OLYMPIC KIDS for bakery products. Roush states that OLYMPIC KIDS simply comprises the word "Olympic," in which Roush has grandfather rights for bakery products, and the word "kids," which Roush states is descriptive of the target users and in any event not subject to any rights of the USOC. Roush states that it is not enlarging its grandfather rights, but is simply exercising them.

Roush stresses that the rights and interests of prior users of "Olympic" words and marks were recognized and preserved by Congress, and states that the Board's denial of registration deprived Roush of the proper-

ty interests that the grandfather provision was enacted to protect. Roush argues that the USOC's only ground of objection to registration of OLYMPIC KIDS for bread products is the presence of the word "Olympic," and that Roush's use of "Olympic" is grandfathered for bakery products. Roush argues that it is irrelevant whether it used OLYMPIC KIDS before 1950, because its grandfather rights to the word "Olympic" preclude any holding that OLYMPIC KIDS violates § 110(a).

The Board recognized Roush's rights to use OLYMPIC for bakery products, but held that these rights do not confer any grandfather benefit on Roush's proposed use of OLYMPIC KIDS, which the Board held was a "different" mark from OLYMPIC. The Board also rejected Roush's "prior registration defense," on the ground that this equitable defense is not available to overcome a statutory prohibition.

### THE STATUTORY PURPOSE

■ A "grandfather" provision in a statute is "[a]n exception to a restriction that allows all those already doing something to continue doing it even if they would be stopped by the new restriction." *Black's Law Dictionary* 699 (6th ed. 1990). Roush states that the Board's ruling frustrates the purpose of the grandfather provision, by narrowing Roush's preexisting rights and limiting Roush's normal commercial use of its grandfathered rights to "Olympic." In response, the USOC foresees dire consequences should Roush be permitted a broadened use of "Olympic," such as in combination with other words, instead of being limited strictly to the actual uses during the grandfathered period.

We look first to the statute for guidance to the interpretation of the grandfather provision. The question before us impinges on both § 110(a) and § 110(c) and the policies they implement. The statutory provisions are not ambiguous. On one hand, there is a clear intent to reserve to the USOC all remaining rights to use and profit from the "Olympic" name and symbols; § 110(c) so

---

2. The Board has held that its authority to interpret the Amateur Sports Act, a statute not consigned to the Board for administration, derives from the provision that the unauthorized use of

trademarks subject to the Act would be an unlawful use in commerce. Roush does not challenge the Board's authority; only the Board's conclusion is disputed.

provides. On the other hand, it is clear that Congress intended to protect prior users, and did so in § 110(a). Cogent arguments are made by both parties as to the dominance of the rights of each, in this region of conflicting interests wherein each side invokes the protection of statutory purpose.

■ A statute is interpreted on the plain meaning of its provisions in the statutory context, *see Good Samaritan Hospital v. Shalala,* — U.S. —, —, 113 S.Ct. 2151, 2157, 124 L.Ed.2d 368 (1993), informed when necessary by the policy that the statute was designed to serve. *See Crandon v. United States,* 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990) (the court should "look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy"); *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). A statute must be construed to give effect to all of its provisions, and not to diminish any of them. *See United States v. Nordic Village, Inc.,* 503 U.S. 30, 36, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). Thus both § 110(a) and § 110(c) must accommodate the overall policy and purpose of the enactment.

■ On review of the statute and the history of its enactment, it is apparent that the primary purpose of these provisions is to secure to the USOC the commercial and promotional rights to all then-unencumbered uses of "Olympic" and other specified words, marks, and symbols, see *United States Olympic Committee v. Intelicense Corp., S.A.,* 737 F.2d 263, 266, 222 USPQ 766, 768 (2d Cir.), *cert. denied,* 469 U.S. 982, 105 S.Ct. 387, 83 L.Ed.2d 321 (1984), but subject to the commercial rights that existed at the time of enactment. The interest in facilitating United States participation in the Olympic games by enhancing the USOC's opportunity to profit from licensing and sales of goods and services that derive their value from the Olympic connection is not in overt conflict with the obligation to safeguard the property rights of prior users. However, while the rights of prior users are protected from diminution, they are also restricted from enlargement.

■ Roush argues that OLYMPIC KIDS represents normal commercial growth of its OLYMPIC-styled bakery products. However, commercial growth into new "Olympic"-based marks is outside the letter of the statute, as well as outside its spirit. The statutory balance that limited prior users to the words, marks, goods and services in use before enactment, and thus limited potential expansion, is not an unreasonable implementation of the legislative policy. This conclusion accords with the spirit of the Supreme Court's observation, on review of the legislative history, that the statute provides broader protection to the USOC than would, simply, trademark rights in the Olympic words and symbols:

> The protection granted to the USOC's use of the Olympic words and symbols differs from the normal trademark protection in two respects: the USOC need not prove that a contested use is likely to cause confusion, and an unauthorized user of the word does not have available the normal statutory defenses.

*San Francisco Arts & Athletics, Inc. v. United States Olympic Committee,* 483 U.S. 522, 531, 107 S.Ct. 2971, 2978, 97 L.Ed.2d 427, 3 USPQ2d 1145, 1149 (1987) (footnote omitted). This explanation is in harmony with the USOC's argument that the purpose of the Act is to secure all commercial and promotional uses of "Olympic" to the USOC, except for those uses that are grandfathered.

### THE BOARD'S DECISION

■ The Board found that OLYMPIC and OLYMPIC KIDS are different marks, based primarily on their different commercial impressions. On this ground the Board denied to OLYMPIC KIDS the benefit of Roush's grandfather rights in OLYMPIC.

Whether marks are "different" is a less stringent criterion than whether the marks are likely to cause confusion. Further, as in determining likelihood of confusion, it is not relevant whether a portion of the mark is disclaimed or does not have strong trademark significance, such as the word "kids." No part of the mark can be ignored in comparing the marks as a whole. *Specialty*

*Brands, Inc. v. Coffee Bean Distributors, Inc.,* 748 F.2d 669, 672–73, 223 USPQ 1281, 1282–83 (Fed.Cir.1984). The Board correctly determined that the marks were different, based primarily on their differing commercial impression. *Cf. American Security Bank v. American Security and Trust Co.,* 571 F.2d 564, 567, 197 USPQ 65, 66–67 (CCPA 1978).

■ We have also considered the criteria for determining whether marks may be linked for purposes of continuity. As summarized in *Van Dyne–Crotty, Inc. v. Wear-Guard Corp.,* 926 F.2d 1156, 17 USPQ2d 1866 (Fed.Cir.1991), to be linked or "tacked" for purposes of continuity the marks must create the same commercial impression, and the later mark must not be materially different from or alter the character of the earlier mark. *Id.* at 1159, 17 USPQ2d at 1868. These criteria are not met by OLYMPIC and OLYMPIC KIDS. We take note that Roush states that it "does not contend that the use of the mark OLYMPIC KIDS is equivalent to the use of the mark OLYMPIC," instead arguing that this is not an issue of legal equivalence. We agree. *See DC Comics, Inc. v. Scholastic Magazines, Inc.,* 210 USPQ 299, 301 (Tr. Trial & App.Bd. 1980) (discussing legal equivalence). However, when different marks present a different commercial impression and are not legal equivalents, it would be an incorrect interpretation of the Amateur Sports Act to hold that they are nonetheless grandfathered under § 110. Thus we affirm the Board's ruling that the proposed use of OLYMPIC KIDS for bakery products is not a permitted extension of Roush's grandfathered rights to the mark OLYMPIC, and not independently registrable.[3]

### THE "PRIOR REGISTRATION" DEFENSE

■ The prior registration or *Morehouse* defense is an equitable defense, to the effect that if the opposer can not be further injured because there already exists an injurious registration, the opposer can not object to an additional registration that does not add to the injury. In *Morehouse Mfg. Corp. v. J. Strickland & Co.,* 407 F.2d 881, 160 USPQ 715 (C.C.P.A.1969), the court explained the principle as follows:

[A]s a matter of law, the opposer cannot be damaged, within the meaning of section 13 of the statute, by the issuance to the applicant of a second registration where applicant already has an existing registration of the same mark for the same goods. Implicit in this are corollaries that if opposer cannot procure the cancellation of the existing registration it cannot prevent the granting of the second registration; that there is no added damage from the second registration of the same mark if the goods named in it are in fact the same, and that if there is no added damage there is no ground for sustaining the opposition.

407 F.2d at 884, 160 USPQ at 717. Roush points to its valid and incontestable prior registrations and use of marks containing the word "Olympic," and argues that the USOC can not be further damaged by registration and use of OLYMPIC KIDS for the same goods. The Board held that the *Morehouse* defense is not available to Roush in view of the existence of the Amateur Sports Act. We doubt that the statute bars invocation of the equitable principles of *Morehouse,* although equity must be administered in light of the voice of Congress and the purpose of the legislation. Equitable principles are available when justice requires, unless the issue has been explicitly treated and legislatively resolved in the legislation.

In this case, however, the *Morehouse* defense by its terms does not serve the purpose sought by Roush. Both the *Morehouse* defense and § 110(a) require that the prior and proposed marks be essentially the same.

3. In contrast, the Board rejected the USOC's opposition to registration of the mark OLYMP, *United States Olympic Committee v. Olymp–Herrenwaschefabriken Bezner GmbH & Co.,* 224 USPQ 497 (Tr. Trial & App.Bd.1984), and also permitted the registration of OLYMPIAN GOLDE, *In re Midwest Tennis & Track Co.,* 29 USPQ2d 1386 (Tr. Trial & App.Bd. 1993). The Board explained that these marks do not include any of the protected words set out in the Amateur Sports Act. In addition, a non-commercial poster using the word "Olympic" was held not to be prohibited by § 110(c). *See Stop the Olympic Prison v. United States Olympic Committee,* 489 F.Supp. 1112, 207 USPQ 237 (S.D.N.Y.1980).

That essential condition is not present, for OLYMPIC and OLYMPIC KIDS are neither the same mark nor are they legal equivalents. *Cf. Place for Vision, Inc. v. Pearle Vision Center, Inc.*, 218 USPQ 1022 (Tr. Trial & App.Bd. 1983) (discussing the requirement for identity of marks). Thus OLYMPIC KIDS carries no presumption that further damage can not flow from its registration. We conclude that Roush's established right to use and registration of OLYMPIC does not provide a prior registration defense in favor of OLYMPIC KIDS.

## CONCLUSION

The Board's decision, sustaining the USOC's opposition to the registration of OLYMPIC KIDS, is

*AFFIRMED.*