# United States Court of Appeals for the Federal Circuit

---

**ANDREW H. BERNARD,**
*Petitioner*

**v.**

**DEPARTMENT OF AGRICULTURE,**
*Respondent*

---

2014-3083

---

Petition for review of the Merit Systems Protection Board in No. DE-0752-11-0222-C-1.

---

Decided: June 11, 2015

---

GERALD CUNNINGHAM, Law Office of Gerald Cunningham, Pensacola Beach, FL, argued for petitioner.

ZACHARY JOHN SULLIVAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by JOYCE R. BRANDA, ROBERT E. KIRSCHMAN, JR., REGINALD T. BLADES, JR.

---

Before PROST, *Chief Judge,* LOURIE, and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge*.

Andrew Bernard and his employer, the U.S. Forest Service (an agency of the U.S. Department of Agriculture), entered into an agreement that settled a case he had filed against the Forest Service at the Merit Systems Protection Board. Within a year of resuming his employment based on the agreement, Mr. Bernard petitioned the Board to enforce the agreement, which he asserted the Forest Service was violating. The Board denied enforcement. We conclude that the Board improperly denied Mr. Bernard discovery of potentially relevant evidence. We vacate the decision and remand for further proceedings.

BACKGROUND

The Forest Service removed Mr. Bernard, a firefighter, from his position as supervisor of a hotshot firefighting crew in February 2011. Mr. Bernard appealed his removal to the Board, seeking reinstatement, back pay, and attorney's fees. The agency and Mr. Bernard settled the matter in August 2011, executing an agreement under which the agency replaced Mr. Bernard's removal with a 14-day suspension, reinstated him in a non-supervisory role, and provided lump-sum payments for back pay and fees. Corrected Joint Appendix (J.A.) 629–30. The agency promised that Mr. Bernard would not be "restricted from applying for future supervisory positions" and would be "allowed to go on future fire assignments . . . the same as any other employee in the fire organization." J.A. 630. The parties agreed "[t]o cooperate and communicate in good faith to implement and to abide by the terms of [the] agreement." J.A. 630.

Under the agency's policy, a firefighting employee, to receive firefighting assignments, must have an unexpired Incident Qualification Card (or "red card"), which lists the specific firefighting positions the employee is qualified to fill, based on work history and training. Each firefighter must renew his red card each year, and the red-card

listing limits what assignments the firefighter may receive. An agency official must annually evaluate and certify "[e]ach employee's incident and prescribed fire position qualifications . . . and a new [red card] must be issued." J.A. 52. A card may not be issued until the employee successfully completes the annual training course on safety.

In February 2012, five months after his reinstatement to employment, Mr. Bernard successfully completed the annual safety course. Other employees who participated in the course received renewed red cards in early March 2012, but the agency did not issue a red card to Mr. Bernard. After Mr. Bernard inquired about the status of his red card, an agency administrator, Christina McKerracher, informed him that, although the computerized system that tracks each employee's qualifications appeared to reflect his full record of work and training, "[a] recent audit" of his records found too few hard-copy documents supporting those entries. J.A. 133.

In response, on March 15, 2012, Mr. Bernard provided the agency a copy of his 2010 red card. That card, signed by certifying official Helen Graham, listed Mr. Bernard as qualified, until 2014, for eleven firefighting positions. J.A. 62. In April 2012, Ms. Graham wrote Mr. Bernard a letter stating that as a prerequisite to receiving a new red card, Mr. Bernard had to provide "acceptable documentation" sufficient to support three specific positions that she stated were inadequately documented: Incident Commander Type 3, Incident Commander Type 4, and Prescribed Fire Burn Boss 2. J.A. 68. Ms. Graham's letter did not refer to Mr. Bernard's 2010 red card, on which Ms. Graham had certified Mr. Bernard as qualified for those specific positions. J.A. 62. Mr. Bernard notified the agency of a potential breach of the settlement agreement, and in late May 2012 he received a red card certifying him as qualified for seven (of the original eleven) positions. J.A. 76.

Mr. Bernard then petitioned the Board to enforce the settlement agreement under 5 C.F.R. §§ 1201.181–1201.183. He argued that the agency, by not timely issuing him a complete (eleven-position) red card, was retaliating against him and thereby breaching the agreement's good-faith and equal-opportunity commitments.[1] He argued that the breach caused him to lose $12,400 in wages and that the agency had not responded to his requests for a revised red card containing all of his previously certified qualifications. He also requested "limited discovery to resolve any major factual disputes" regarding the charge of retaliation. J.A. 47. After receiving the agency's response, Mr. Bernard filed a reply in which he again asked for discovery, requesting "a brief discovery period directed to the events of the audit, the two individuals who determined the documents were insufficient, and the cause of the missing records." J.A. 204.

The administrative judge denied the petition for enforcement, concluding that Mr. Bernard had failed to meet his burden of proving a breach of the agreement. J.A. 16–17; *see* 5 C.F.R. § 1201.183(d) (party seeking to enforce a settlement agreement has the burden to prove breach). As to Mr. Bernard's allegations of retaliation and bad faith, the administrative judge concluded— without acknowledging Mr. Bernard's repeated requests for discovery—that Mr. Bernard "did not support his bare allegations with any evidence illustrating bad faith." J.A. 16.

---

[1] We do not understand Mr. Bernard to allege that the agency's actions constitute retaliation under the Whistleblower Protection Act, *see* 5 U.S.C. § 1221, but rather that evidence of retaliation is relevant in determining whether the agency breached its contractual obligation of good-faith cooperation, *see Kuykendall v. Dep't of Veterans Affairs*, 68 M.S.P.R. 314, 325 (1995).

The Board affirmed. In addressing Mr. Bernard's argument that the administrative judge improperly denied his discovery requests, the Board concluded that parties in enforcement proceedings generally do not need to request permission for discovery and that "the Board generally only becomes involved in discovery matters if a party files a motion to compel." J.A. 4. Because Mr. Bernard did not file a motion to compel discovery, the Board concluded, the administrative judge did not err in ignoring Mr. Bernard's several requests.

Mr. Bernard appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Mr. Bernard asks us to set aside the Board's decision because the administrative judge was required to respond to his discovery requests. He also asks that we reverse the Board's determination that he failed to prove breach of the settlement agreement. We agree with Mr. Bernard as to the first issue. And because the Board's discovery error impaired Mr. Bernard's ability to gather evidence that may help prove breach, the proper course is to vacate the Board's decision and remand for further proceedings.

We review the Board's decision to determine whether it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005).

Mr. Bernard twice asked for discovery, but the administrative judge never acted on those requests, and he denied the enforcement petition without receiving evidence Mr. Bernard might have gathered in the discovery he requested. In affirming the denial of enforcement, the Board did not conclude, and the agency here does not contend, that in an enforcement proceeding like this one the Board may deny a complainant like Mr. Bernard all discovery, including discovery of potentially relevant evidence, even if sought through the proper channels. Rather, the Board concluded, and the agency argues, that Mr. Bernard clearly had, but simply bypassed, the opportunity to obtain discovery. In the Board's view, Mr. Bernard could have directly asked individuals to sit for depositions, or to respond to other discovery requests, and, if he met resistance, moved to compel the requested discovery. But the Board had no sound foundation, in general regulations, Board precedents, or case-specific orders, for its conclusion that it was permissible for the administrative judge to disregard Mr. Bernard's clear requests for discovery. Mr. Bernard did not have a clear right to engage directly in discovery without obtaining permission before the administrative judge made his agreement-compliance decision under the enforcement procedures, 5 C.F.R. § 1201.183(a)(4).

No regulation makes clear that Mr. Bernard could proceed directly to take discovery, without permission from the administrative judge, before the administrative judge rendered his initial decision on the agency's compliance. The discovery regulations cited by the Board, 5 C.F.R. §§ 1201.71–1201.75, appear in subpart B of 5 C.F.R. pt. 1201, covering "appellate cases," *see* 5 C.F.R. §§ 1201.11–1201.113. That subpart is distinct from subpart F governing "Enforcement of Final Decisions and Orders," 5 C.F.R. §§ 1201.181–1201.183, under which the present enforcement proceeding was brought. It is anything but clear that the former is applicable to the latter.

Indeed, the opposite is suggested by the mismatch between the rules for discovery under § 1201.73, including timing rules that allow 20 days for response to a discovery request, § 1201.73(d)(2), and the much tighter schedule prescribed for enforcement proceedings: *e.g.*, the agency must respond to an enforcement petition within 15 days, and the petitioner has only 10 days to reply before the administrative judge may make a determination of compliance, § 1201.183(a). Thus, the regulations themselves provide no clear guarantee of direct discovery applicable to Mr. Bernard's case.

Nor do Board precedents interpreting the regulations provide such a clear guarantee. The enforcement-proceeding precedent on which the Board relied here does suggest a direct-discovery right, *King v. Dep't of Navy*, 98 M.S.P.R. 547, 552 (2005) ("a party does not need the Board's approval to engage in discovery"), but *King*'s precise meaning on the facts presented—perhaps involving discovery *after* an initial compliance order under 5 C.F.R. § 1201.183(a)(5)—is not clear. Moreover, *King*'s only cited legal authority is § 1201.73, which, as we have just noted, appears not to apply to enforcement proceedings. In any event, *King* does not stand alone. In *Ernst v. Department of Treasury*, the Board, following earlier pronouncements, declared: "An employee is not entitled to discovery in enforcement proceedings, although the AJ has the discretion to grant such a request." 69 M.S.P.R. 133, 139 (1995), *aff'd,* 92 F.3d 1208 (Fed. Cir. 1996) (Table); *see Forston v. Dep't of Navy*, 60 M.S.P.R. 154, 158 (1993); *Covert v. Dep't of Navy*, 31 M.S.P.R. 376, 382 (1986). The Board in *King* did not address *Ernst* and its predecessors. And since *King*, the Board has repeated the *Ernst* proposition, citing *Ernst* as establishing that, "in an enforcement proceeding, an employee is not entitled to discovery to establish his allegations, although the administrative judge may grant discovery in his discretion, if necessary to resolve disputed facts." *Young v. U.S. Postal*

*Serv.*, 113 M.S.P.R. 609, 620 (2010). Thus, Board precedent, combined with the regulations, gave Mr. Bernard no genuine notice that he could take discovery in this enforcement proceeding without advance permission from the administrative judge.

We also cannot find such notice in any orders issued in Mr. Bernard's case. The government contends that the administrative judge in fact granted discovery by way of an acknowledgment order sent to both parties upon receipt of Mr. Bernard's petition for enforcement. J.A. 84 (the "Enforcement Order"). That order does not mention discovery expressly, but it does state that "the procedures and filing requirements set forth in the Order acknowledging [Mr. Bernard's] *original appeal* [the one that was settled] are applicable in this case." J.A. 84 (emphasis added). The government argues that because the acknowledgement order in the underlying appeal granted discovery, *see* J.A. 279 (the "Appeal Order"), the Enforcement Order's reference to those procedures did the same. But this argument fails to justify the administrative judge's disregard of Mr. Bernard's express discovery requests.

The Board itself did not conclude that the Enforcement Order provided the opportunity for discovery. And there is good reason for the Board not to have relied on the reasoning the government now advances. The Enforcement Order does not provide meaningful notice that discovery was being authorized. In referring to the Appeal Order for "procedures and filing requirements," it makes no mention of discovery specifically. And while that omission might not matter if the discovery provisions of the Appeal Order fit the enforcement context, they plainly do not. Most concretely, there is essentially the same timing-rules mismatch we identified above in discussing the regulations.

Thus, the Enforcement Order provides three clear deadlines: (1) the agency must file its written response to Mr. Bernard's petition "within 15 calendar days"; (2) Mr. Bernard may then file a reply within 10 days of being served with the agency's filing; and (3) the evidentiary record closes the same day Mr. Bernard's reply is due, *i.e.*, "10 calendar days from the date of service of the agency's reply to appellant's petition." J.A. 85. That schedule allows 25 days from petition to closure of the record.

Yet the Appeal Order instructed the parties that "initial [discovery] requests . . . must be *served* on the other party within 25 calendar days of the date of *this* Order," and "[r]esponses to initial discovery requests must be served promptly but no later than 20 days after the date of service of the other party's discovery request or the MSPB order." J.A. 279 (emphases added). If we strike out the phrase "the date of this Order" and replace it with a reference to the date of the *Enforcement* Order, we obtain an order under which the record closed before any response to a discovery request was required. Similar problems arise from trying to apply the Board's discovery regulations for appellate cases, 5 C.F.R. §§ 1201.71–1201.75, which the Appeal Order designates as the "procedures [to be] used for discovery," J.A. 279, and which establish timelines applicable unless the administrative judge instructs otherwise, § 1201.73(d). Under the regulations, parties must serve initial discovery requests "within 30 days after the date on which the judge issues an order to the respondent agency to produce the agency file and response"; the responding party has 20 days to respond to discovery requests; and discovery must be completed "no later than the prehearing or close of record conference." *Id.*

Perhaps it is possible to translate the terms of the regulations and Appeal Order into the enforcement setting. We might even construct a scenario in which Mr. Bernard could have initiated discovery within a few days

of filing his petition, even before getting the agency's response to his charge of noncompliance (which would define the actual dispute), then awaited responses within the time allowed under the Appeal Order and regulations, and have had time to digest and use the discovered evidence before his last filing was due and the enforcement record closed under the Enforcement Order. But such an effort to force discovery into the Appeal Order schedule is so strained, and produces a discovery schedule so far from what the Board regulations indicate to be truly adequate, that Mr. Bernard cannot be expected to have understood the Enforcement Order to incorporate the Appeal Order's authorization for discovery in the underlying appeal. It is hardly surprising that the Board did not conclude otherwise.

At oral argument, the government did not dispute that the Enforcement Order and Appeal Order deadlines were a mismatch, Oral Arg. at 22:40–23:00, but it urged that Mr. Bernard should have taken advantage of the Enforcement Order's invitation to the parties to call the judge by phone if they were confused by any of the stated procedures, J.A. 84. But Mr. Bernard's clear and explicit discovery requests—in two formal filings to the administrative judge—sufficiently conveyed his belief that discovery was unavailable without an order from the administrative judge. Under these circumstances, we conclude that the Board abused its discretion by holding that the administrative judge was not obliged to respond to Mr. Bernard's requests. *See Cultor Corp. v. A.E. Staley Mfg. Co.*, 224 F.3d 1328, 1332 (Fed. Cir. 2000) (a court may abuse its discretion by failing to explain its decision unless "the explanation is apparent" from the record) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

We cannot say that the error was harmless. Mr. Bernard's allegations of breach-by-retaliation were detailed, particularized, and far from speculative given the questions raised and currently unanswered by the record. *See*

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). By way of example: Helen Graham, the agency certifying official, issued Mr. Bernard a red card in 2010 bearing her signature. The 2010 card indicated that he was qualified for 11 positions, each qualification to last until 2014. J.A. 62. Ms. Graham was also the official charged with reevaluating Mr. Bernard's qualifications in 2012. Yet, despite her signature on Mr. Bernard's 2010 red card, listing 11 unexpired qualifications, Ms. Graham maintained that the documentation underlying those unexpired qualifications was now deficient. Moreover, while the agency withheld certification for only some, not all, of Mr. Bernard's qualifications, Ms. Graham at one point stated that his hard-copy file was "empty." J.A. 143. Given that issues of motivation are raised under the settlement agreement's requirement of good-faith cooperation, we can hardly say that the record in this case supplies no basis for discovery.

Finally, we reject the government's argument that all Mr. Bernard seeks is $12,400 in damages, the Board cannot award damages, and therefore the Board cannot award a remedy even if he proves breach. *See Lary v. U.S. Postal Serv.*, 472 F.3d 1363, 1368 (Fed. Cir. 2006) ("[T]he Board does not have authority to grant damages . . . ."). The Board did not refuse to reach the merits on any such basis. Moreover, Mr. Bernard did not limit his petition to a damages remedy. His red card has admittedly not been fully restored to its pre-2012 status, and the Board's enforcement authority is broad enough to facilitate such restoration, within the limits of the agency's valid policies, *see Smith v. Dep't of Army*, 458 F.3d 1359, 1364 (Fed. Cir. 2006). In addition, the Board's enforcement powers under 5 U.S.C. § 1204(a)(2) may in appropriate circumstances include the power to award both back pay "and other relief." *Lary v. U.S. Postal Serv.*, 493 F.3d 1355, 1356–57 (Fed. Cir. 2007) (clarifying original opinion on petition for rehearing). On remand, the Board

may determine whether this case presents such circumstances.

## CONCLUSION

For those reasons, we vacate the Board's decision and remand for further proceedings consistent with this opinion.

No costs.

**VACATED AND REMANDED**