NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**BRITTEX FINANCIAL, INC.,**
*Appellant*

**v.**

**DOLLAR FINANCIAL GROUP, INC.,**
*Cross-Appellant*

---

2021-1370, 2021-1449

---

Appeals from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 92060888.

---

Decided:  November 24, 2021

---

ROBERT L. MCRAE, Gunn, Lee & Cave, PC, San Antonio, TX, argued for appellant.  Also represented by NICHOLAS ADAM GUINN.

BASSAM IBRAHIM, Buchanan Ingersoll & Rooney PC, Alexandria, VA, argued for cross-appellant.  Also represented by BRYCE J. MAYNARD.

---

Before NEWMAN, PROST, and TARANTO, *Circuit Judges*.

TARANTO, *Circuit Judge*.

The Trademark Trial and Appeal Board denied a petition to cancel two trademark registrations. *Brittex Financial, Inc. v. Dollar Financial Group, Inc.*, Cancellation No. 92060888 (TTAB Sep. 30, 2020) (*Board Op.*). We reverse the Board's priority determination, which formed the sole basis for its denial of the petition, and remand for further proceedings.

I

In March 2013, Dollar Financial Group filed two applications to register MONEY MART (one in standard characters, one with a design) as a trademark for several listed services, including "pawn brokerage and pawn shops." *See Board Op.* at 1–2; J.A. 88, 218. Only the year before, *i.e.*, 2012, had Dollar "beg[u]n offering pawn brokerage and pawn shop services to the public," having "beg[u]n taking steps" to do so in 2010. Dollar Response Br. at 8–9; *see Board Op.* at 12. In May 2014, the Patent and Trademark Office (PTO) issued the requested Principal Register registrations—Nos. 4,524,540 and 4,532,073—under Lanham Act § 1(a), 15 U.S.C. § 1051(a).[1]

---

[1]    Registration No. 4,524,540 is for MONEY MART (with "MONEY" disclaimed), as a standard character mark, for "pawn brokerage and pawn shops; providing monetary exchange services, namely, exchanging gold and silver of others for cash; issuing of prepaid debit cards; issuing of prepaid gift cards; [and] gift card transaction processing services." J.A. 88.

Registration No. 4,532,073 is for MONEY MART (with "MONEY" disclaimed), consisting of "the stylized wording 'MONEY MART' superimposed over a circular design," for "loan financing; check cashing and electronic funds transfer services, but not including extensions of credit except to the extent evidenced by a check; pawn brokerage and pawn

In 2015, Brittex Financial, Inc. filed with the PTO, under Lanham Act § 14, 15 U.S.C. § 1064, a petition to cancel those Dollar registrations. Brittex had been consistently using MONEY MART PAWN or MONEY MART PAWN & JEWELRY in connection with its pawn brokerage and pawn shop services since 1993. *Board Op.* at 13–15. Brittex contended (among other things) that the registrations were improperly issued, in violation of Lanham Act § 2(d), which bars registration on the Principal Register of a mark that "so resembles . . . a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1052(d). Brittex argued its use of MONEY MART (as part of its slightly longer marks) for pawn brokerage and pawn shop services preceded Dollar's use for those services, Dollar's use of the mark for those services would likely cause confusion with Brittex's use for such services, and Brittex was likely to be damaged as a result.

The PTO's Trademark Trial and Appeal Board denied the petition to cancel on September 30, 2020. *Board Op.* at 1, 3, 29. The record established the above-stated facts, and the Board found certain other facts that it invoked in rejecting the petition for cancellation. Thus, the Board found that Dollar had started using MONEY MART in connection with *certain* services in 1984 that fit under the labels "loan financing, check cashing, and electronic funds transfer services." *Board Op.* at 12–13; *see id.* at 10–13; Dollar Response Br. at 8 ("[Dollar] primarily offers check cashing and loan financing services, including payday lending

_____

shops; providing monetary exchange services, namely, exchanging gold and silver of others for cash; issuing of prepaid debit cards; issuing of prepaid gift cards; [and] gift card transaction processing services." J.A. 218.

services, at its MONEY MART stores. . . . Payday lending services are a form of loan financing . . . ." (citing J.A. 2317, 2322–23)). The Board also found that Dollar owned an earlier registration, namely, Registration No. 3,206,120 for MONEY MART for use with "loan financing" services (no other services specified) and that the '120 registration—issued in February 2007 based on an April 2006 application that asserted 1984 as a date of first use, J.A. 1977—is now "incontestable and unchallenged in this proceeding." *Board Op.* at 23; *see generally* Lanham Act §§ 15, 33, 15 U.S.C. §§ 1065, 1115; *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189 (1985); *In re Cordua Rests., Inc.*, 823 F.3d 594, 599–600 (Fed. Cir. 2016).[2]

The Board recognized that "there are two elements of [Brittex's] § 2(d) claim, i.e., that [Brittex] has priority, and

---

[2]   Earlier in the Board proceedings, Dollar, invoking the '120 registration, presented a defense to the petition to cancel based on *Morehouse Mfg. Corp. v. J. Strickland & Co.*, 407 F.2d 881 (CCPA 1969). *See also O-M Bread, Inc. v. U.S. Olympic Committee*, 65 F.3d 933, 938 (Fed. Cir. 1995). Dollar asserted that, in light of Dollar's incontestable, unchallenged '120 registration for "loan financing," Brittex could not be injured by the two 2014 registrations now at issue, because pawn brokerage and pawn shop services were within the "loan financing" services for which the '120 registration gave Dollar exclusive rights. *See* J.A. 50–51, 509. On January 17, 2018, the Board struck that defense. J.A. 44, 49–55. The Board concluded that Brittex separately alleged injury from likely confusion as to non-pawn services listed in the 2014 registrations (which covered, *e.g.*, exchanging gold and silver of others for cash and prepaid debit or gift cards)—services that Dollar had not asserted, and the Board did not find, come within the '120 registration even if pawn brokerage and pawn shop services do. J.A. 52–55.

that a likelihood of confusion exists." *Board Op.* at 10. The Board proceeded to address priority. It first made the findings that, as between Brittex and Dollar, Brittex was the first to offer pawn brokerage and pawn shop services (starting in 1993), whereas Dollar was offering "loan financing, check cashing, and electronic funds transfer services" as early as 1984. *Id.* at 10–15; *see id.* at 15 ("[Dollar] does not dispute that [Brittex] was the first party to use the term MONEY MART expressly in connection with pawn services."). The Board then stated: "If we find that pawn brokerage and pawn shop services are covered or encompassed by loan financing, then we must resolve the issue of priority in [Dollar's] favor." *Id.* at 17. "If we do not," the Board added, it would consider whether pawn brokerage and pawn shop "services are within [Dollar's] zone of natural expansion." *Id.*

The Board did not reach the natural-expansion issue (or the likely-confusion issue) because it found that pawn brokerage and pawn shop services are "covered or encompassed by loan financing." The Board recited evidence that clearly establishes the fact that pawn brokerage and pawn shop services have two features: one is the making of collateralized loans; the second is the retail sale of the collateral when forfeited under the terms of the loan. *Id.* at 17–23. The Board then reached its conclusion by introducing Dollar's '120 registration of MONEY MART for "loan financing" (from 2007) into the analysis, noting its incontestable and unchallenged character:

> That registration grants [Dollar] the exclusive right to use that mark in connection with those services. *Stone Lion Capital Partners, L.P. v. Lion Capital* LLP, 746 F.3d 1317[, 1324], 110 USPQ2d 1157, 1162 (Fed. Cir. 2014); *see also* 15 U.S.C. § 1057(b) (the registration is prima facie evidence of the registrant's exclusive right to use the mark "in connection with the goods or services specified in the certificate"). As such, we construe [Dollar's]

"loan financing" in that registration as encompassing all services that fall within that broad specification, including pawn services, *See Sw. Mgmt., Inc. v. Ocinomled, Ltd.*, 115 USPQ2d 1007, 1025[, 2015 WL 4464550, at *17] (TTAB 2015) (Where services are identified broadly, "we must presume that the services encompass all services of the type identified.") *quoted in In re Country Oven, Inc.*, 2019 USPQ2d 443903, *4[, 2019 WL 6170483, at *2] (TTAB 2019) and *cited in In re AC Webconnecting Holding B.V.*, 2020 USPQ2d 11048, *11-12[, 2020 WL 5544272, at *13] (TTAB 2020).

Consequently, since [Brittex] did not provide its pawn services until 1993, well after [Dollar] began providing its loan financing services in 1984, [Brittex] has failed to establish priority through its common law rights in the mark MONEY MART PAWN or MONEY MART PAWN & JEWELRY and thus cannot prevail in its petition to cancel [Dollar's] registrations on grounds of priority and likelihood of confusion.

*Board Op.* at 23–24.  The Board then rejected Brittex's claim of fraud on Dollar's part, which was the then-remaining ground for the petition to cancel, and is not at issue on appeal.  *Id.* at 24–29.

Brittex timely appealed.  Dollar timely cross-appealed the dismissal of its *Morehouse* defense.  We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

## II

We decide de novo whether the Board's rulings rest on legal errors, and we review the Board's factual findings for support in substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *In re N. Carolina Lottery*, 866 F.3d 1363, 1366 (Fed. Cir. 2017).

A

Brittex challenges the Board's determination that it lacked priority for purposes of the § 2(d) analysis. We agree that the Board's conclusion regarding priority cannot stand.

A straightforward application of § 2(d) to the facts before us—which are undisputed insofar as they matter for present purposes—supports Brittex's argument for its priority. In the two applications at issue, filed in 2013, Dollar seeks to register MONEY MART for use in connection with, among other things, "pawn brokerage and pawn shop services." The Board did not deny, and we may presume, that such use by Dollar would likely cause confusion because of Brittex's own use of that two-word phrase as a prominent part of its own offering of pawn brokerage and pawn shop services. Brittex, not Dollar, was the first to use that mark in connection with pawn brokerage and pawn shop services. In short, Dollar seeks to use a mark that "so resembles . . . a mark or trade name previously used in the United States by another and not abandoned," as to be likely to cause confusion, respecting specific services expressly listed in the registrations. Lanham Act § 2(d), 15 U.S.C. § 1052(d). "It is sufficient in an inter partes case if likelihood of confusion is found as to use of the mark on any item that comes with the description of goods or services in the application or registration." 3 J. McCarthy on Trademarks and Unfair Competition § 20:15 (5th ed. 2021) (hereinafter McCarthy).

The Board set forth no sound basis for drawing a different conclusion. The evidence readily showed, of course, that one part of pawn brokerage and pawn shop services is one kind of "loan financing." But the Board did not cite any authority, or offer legal support, for using that fact to strip Brittex of its facial priority.

Even as a general matter, the Board provided no support for the notion that a registrant has priority as to a

specific service it was second to offer just because it was first to offer a different specific service that is a species of a genus that covers both specific services.  Here, such authority or other sound basis in law would be necessary to give Dollar priority over even the collateralized lending aspect of pawn services (as to which Brittex was first) just because Dollar was first in offering certain other forms of lending, even if both can be described under the label, "loan financing."  Even more specifically, the Board did not offer authority or a sound legal basis for drawing its priority conclusion where, as is true of one of the registrations at issue here, the service the registrant was second to offer (here "pawn brokerage and pawn shops") is expressly listed separately from the category of services (here "loan financing") the registrant was first to offer.

More specifically still, the Board provided no support for its priority conclusion in the distinctive circumstance present here.  The evidence makes clear that pawn brokerage and pawn shop services integrate two different components, only one of which can be labeled "loan financing"— the lending, but not the retail sale of collateral.  If the Board is understood to have found as a factual matter that the entirety of this mixed-character business is "covered or encompassed by loan financing," *Board Op.* at 17, that finding is unreasonable and therefore unsupported by substantial evidence.

The Board invoked Dollar's '120 registration, with its express description "loan financing," to fill the gap between its findings and the ultimate conclusion it reached.  *See id.* at 23–24.  But the Board set forth no basis on which that registration supplies an answer to the question presented in this case—which is whether two different, later registrations of Dollar's are invalid under § 2(d) because they expressly cover services as to which Brittex, not Dollar, was first to use the mark being registered (or one so resembling it so that confusion is likely).

This case does not involve infringement of the trademark registered in the '120 registration or the validity of that registration (including the role of incontestability), both of which would present distinct questions about that registration's scope.[3] Nor does this case involve any application for registration by Brittex being opposed by Dollar based on the '120 registration (or a Brittex registration sought to be cancelled on that basis). Putting aside the Board-rejected *Morehouse* defense (discussed *infra*), Dollar has not shown, and the Board did not explain, how the analysis of the validity of Dollar's '540 and '073 registrations is properly affected by Dollar's '120 registration. *Cf. In re Cordua*, 823 F.3d at 600 (noting that "this proceeding does not involve a challenge to" an earlier registration and explaining that "[t]he presumption of validity of 15 U.S.C. § 1057(b) does not carry over from registration of the older mark to a new application for registration of another mark that happens to be similar (or even nearly identical). *See, e.g., In re Shinnecock Smoke Shop,* 571 F.3d 1171, 1174 (Fed. Cir. 2009) ('Applicant's allegations regarding similar marks are irrelevant because each application must be considered on its own merits.')"). And as to priority dates in particular, the Board here did not conclude, much less justify any conclusion, that the '120 registration—which issued in 2007 on a 2006 application that asserts a first use of 1984—establishes as a matter of law that Dollar has priority back to 1984 for every service that comes within the

---

[3] The *Stone Lion* decision and the three Board decisions cited by the Board in its paragraph invoking the '120 registration all involved questions of the validity of a particular registration, assessed based on what goods or services that registration declared covered. The Board did not point to anything in those decisions that addressed use of a trademark owner's not-at-issue registration to affect the analysis of the validity of a new registration by the same owner.

10    BRITTEX FINANCIAL, INC. v. DOLLAR FINANCIAL GROUP, INC.

broad category "loan financing." *Cf.* 2 McCarthy § 16:19 & nn. 4–5 (noting limited significance of registration's assertion of date of first use, citing 37 C.F.R. § 2.122(b)(2)).

For those reasons, the Board's basis for rejecting Brittex's priority under § 2(d) cannot stand. Given that we next affirm the Board's rejection of the *Morehouse* defense, we must reverse the denial of the petition and remand.

B

In its cross-appeal, Dollar challenges the Board's striking of Dollar's *Morehouse* defense. *See* note 2, *supra.* We reject the challenge.

The *Morehouse* defense "is an equitable defense, to the effect that if the opposer can not be further injured because there already exists an injurious registration, the opposer can not object to an additional registration that does not add to the injury." *O-M Bread*, 65 F.3d at 938. In *Morehouse*, this court's predecessor explained, in the opposition context of Lanham Act § 13, 15 U.S.C. § 1063, that

> as a matter of law, the opposer cannot be damaged, within the meaning of section 13 of the statute, by the issuance to the applicant of a second registration where applicant already has an existing registration of the same mark for the same goods. Implicit in this are the corollaries that if opposer cannot procure the cancellation of the existing registration it cannot prevent the granting of the second registration; that there is no added damage from the second registration of the same mark if the goods named in it are in fact the same; and that if there is no added damage, there is no ground for sustaining the opposition.

407 F.2d at 884. We review the Board's decision for abuse of discretion. *Teledyne Techs., Inc. v. W. Skyways, Inc.*, 208 Fed. Appx. 886, 890 (Fed. Cir. 2006). A showing of abuse of discretion requires showing that the decision rests on

legal error or insufficiently supported factual findings or an unreasonable judgment in weighing relevant factor. *See Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 n.2 (2014); *Bernard v. Dep't of Agriculture*, 788 F.3d 1365, 1367 (Fed. Cir. 2015).

Dollar's challenge to the Board's striking of its *Morehouse* defense rests on the premise that all uses covered by the two 2014 registrations from which Brittex claims injury are already covered by the '120 registration, which is limited to "loan financing." The Board committed no abuse in rejecting that premise. It reasonably construed Brittex's petition as claiming injury from the new registrations' coverage of all the listed services, not just pawn brokerage and pawn shop services. J.A. 54 (discussing J.A. 499–500). And it noted that, as to a number of such non-pawn services ("'monetary exchange services, namely, exchanging gold and silver of others for cash; issuing of prepaid debit cards; issuing of prepaid gift cards; gift card transaction processing services'"), Dollar "has not asserted, and we do not find, that these additional services are encompassed within or are substantially identical to those in the prior registration." J.A. 53.

That is enough to reject Dollar's cross-appeal challenge. The *Morehouse* defense, we have said, "require[s] that the prior and proposed marks be essentially the same," *i.e.*, "legal equivalents." *O-M Bread*, 65 F.3d at 938, 939. The Board reasonably determined that Brittex challenged the registrations at issue for, among other things, services related to, *e.g.*, prepaid debit cards, gift cards, and gold and silver, that are not "essentially the same" as loan financing services. *Id.* Although the Board struck the defense sua sponte, Dollar has shown no prejudicial error from that process given the substantive inapplicability of the *Morehouse* defense.

12    BRITTEX FINANCIAL, INC. v. DOLLAR FINANCIAL GROUP, INC.

## III

For the forgoing reasons, we reverse the Board's priority determination (and therefore its denial of the petition for cancellation) and remand for further proceedings consistent with this opinion.

The parties shall bear their own costs.

**REVERSED AND REMANDED**